EVANS AND IGLEHART *vs.* JOSEPH E. MERRIKEN.
*June*, 1836.

By the deed of mortgage, the legal estate becomes vested in the mortgagee, defeasible at law upon the performance of the condition and payment of the money at the time stipulated; but upon default of the mortgagor in the non-payment of the money at that time, it becomes indefeasible at law, and defeasible only in equity, where the mortgage is considered only as a security for the debt and the mortgagor notwithstanding his default will be permitted to redeem.

The issue of a mortgaged slave, born after the title of the mortgagee has become absolute at law, and during the possession of the mortgagor, is liable for the payment of the mortgage debt; and such issue may be sold upon a bill filed to enforce payment, although no specific notice of the issue is taken in the bill.

The assignee of the mortgagor of personal property, cannot plead limitations to the bill of the mortgagee claiming a sale of the mortgaged property for the payment of his debt, when the mortgagee had no knowledge of his adversary claim for a sufficient time to make the bar available.

APPEAL from the court of *Chancery*.

The appellants on the 15th of April, 1834, filed their bill in the court of Chancery, for the foreclosure and sale of certain personal property, which had been mortgaged to them by *William D. Merriken*, the father of the appellee and others, who were made defendants.

In the mortgage (which bore date 18th April, 1823,) were mentioned several female negro slaves, who with other property, were conveyed to the appellants to secure the payment of $794, due from the mortgagor to them, and there

was the usual clause of redemption, in case the mortgage debt with interest, should be paid on the 18th of April, 1824, Nothing was said in the instrument about the issue of the female slaves, nor was any reference made to such issue in the complainants' bill.

A decree passed for the sale of the property on the 4th of August, 1834, and in the trustee's report it was stated, that in addition to the original slaves, they had sold two negroes, the issue of the females, who were born after the forfeiture of the mortgage, but whilst the parents were in possession of the mortgagor.

Objections were filed by the appellee and others, the representatives of the mortgagor, to the ratification of the sale, so far as related to the before mentioned issue, but the proceedings show, that the controversy was finally narrowed down to one of the issue, who was claimed by the appellee, upon the following grounds.

1. That the said negro was not included in the mortgage, and was not legally transferred to the mortgagees by the terms thereof, there being no mention of the increase.

2. That the bill does not pray for a sale of the increase, and therefore, it could not be sold, though the legal operation of the mortgage should transfer such increase.

3. That the negro so sold was not the property of the mortgagor, and liable to the claim of the complainants, he having been for a valuable consideration, sold and delivered by the mortgagor to the appellee, and having remained in his possession from the time of the sale and delivery, until sold by the trustees, with the knowledge of the complainants, and without any claim of the title to him, on their parts.

4. That, but for the negligence of the complainants, and the indulgence shown by them to the mortgagor, their debt might have been fully secured without having recourse to the property claimed by the appellee, and

5. Upon the ground of limitations.

The appellee in support of his claim, to the negro in question, filed a bill of sale executed to him by the mortgagor on

the 23d of January, 1826, by which for the consideration of $20, the title of the mortgagor to said negro was conveyed to him. This bill of sale, was acknowledged before a justice of the peace on the day of its date, but did not appear to have been recorded.

After proof had·been taken by the parties, under an order for that purpose, the Chancellor (*Bland*) on the 23d of March, 1835, referred the case to the auditor, with directions to state an account, awarding the whole of the proceeds of the sale of the negro in controversy, to the appellee. The account in other respects to be stated according to the nature of the proof.

The auditor having stated an account in conformity with this order, appropriating to the appellee, the proceeds of the sale of the said negro, and applying the proceeds of the other property to the complainants' claim, leaving a considerable balance unpaid, the complainants excepted on that ground to the account. But the Chancellor, on the 4th of April, 1835, overruled their exception, and ratified and confirmed the account, and the complainants thereupon, brought the record by appeal before this court.

The cause was argued before BUCHANAN, Ch. J. and STEPHEN, DORSEY, CHAMBERS, and SPENCE, Judges

HAMMOND AND PINKNEY, for the appellants, contended:

1. That the issue of a female negro slave, born after forfeiture, is liable to be sold to satisfy the mortgage debt, the title of the mortgagee in the mortgaged premises, in such circumstances, being complete. 1 *Powel on Mortg.* 172. *Ib.* 171, (1) *Maston vs. Hobbs*, 2 *Mass. Rep.* 435· *Conard vs. Atlantic Ins. Co.* 1 *Peters' Rep.* 441. *Jameson vs. Bruce*, 6 *Gill. and John.* 72. *Brown vs. Bement and Strong*, 8 *John. Rep.* 96. *Holmes et al, vs. Crane*, 2 *Pick.* 610. *Jones vs. Smith*, 2 *Ves. Jr.* 378. His right to the possession and property being consummate, the rents, issues and profits, follow as a necessary incident, both at law and in equity,

6      v.8

1 *Cov. Powel,* 172, 175, 162, *note* (*h.*)   157, (*b.*)   2 *Jacob and Walk.* 235.   If the mortgagee had been in possession of the mortgaged property, at the time of the birth of the increase, there can be no more doubt, in relation to the mortgagor's right to redeem it, than of his right to redeem the parent stock, which must proceed upon the ground, that such stock and the increase are in the same situation; both alike, regarded in the light of a security for the debt.   *Field vs. Beeler,* 3 *Bibb.* 18.   Suppose, instead of personal chattels, the mortgage had been of land, and during the possession of the mortgagor, there had been an augmentation by alluvion, would not the land so formed, have constituted, together with the original soil, a security to the mortgagee?   There can be no doubt of it, and the reason in favour of such extension of the security, applies with equal, if not greater force, in the case of personal property, because the right to the latter, carries with it the possession.

No principle is better established, than that the owner of the mother is entitled to the offspring.   2 *Black Com.* 404. And this, though such owner is merely the life tenant, because the offspring is regarded as a profit accruing during his title.   1 *Har. and Johns.* 526.   7 *Ib.* 257.   That any increase to the subject mortgaged, is considered parcel of the security, is indisputably settled.   *Field vs. Beeler,* 3 *Bibb.* 18. *Hughes vs. Graves,* 1 *Litt. Rep.* 317.   *Crews vs. Pendleton, &c.* 1 *Leigh. Rep.* 297.   *Moor's Ex'r vs. Ajlete's Ex'r,* 1 *Hen. and Munf.* 29.

The increase of a pledge, is itself pledged.   *Story on Bail,* 200.   And the right of the mortgagee, is superior to that of the pledge.   *Haven vs. Low,* 2 *New Hamp.* 13.

2. The defence resulting from limitations will not avail the appellee.   In the first place, he has not presented it in such a form, as would entitle him to the benefit of the statute, even if under the circumstances, it would constitute an effectual defence.   Such however, is not the case.   The possession of the mortgagor, and those deriving title from him, is the possession of the mortgagee.   *Angel on Limitations,* 105,

113. *Higginson vs. Mein,* 4 *Cranch,* 415. It is not regarded as adverse, having commenced originally with the permission of the mortgagee. *Gwynn vs. Jones' lessee,* 2 *Gill and John.* 173. *Parkins vs. Parker,* 1 *Mass. Rep.* 125. *Fishwick vs. Sewell,* 4 *Har. and John.* 428. *Angel on Lim.* 297, 298. And though such possession may subsequently become adverse, that will not influence the rights of the parties, unless the fact of such adverse holding is known to the mortgagee sufficiently long to perfect the statutory bar before he institutes proceedings to vindicate his rights. A clandestine holding is of no avail. *Angel,* 72. *Calles vs. Tolson's Ex'rs,* 6 *Gill and John.* 80.

It has been said however, that as the bill does not pray a sale of the increase, as well as the original stock of slaves, that therefore, on that account, the sale is erroneous. The answer to this is, that the increase is regarded as an improvement merely of the property, an incident to it; and as liable to be sold, without specific mention, as the interest of the debt is recoverable, without a specific prayer for that purpose. A decree for the sale of the increase, not being inconsistent with the specific prayer, is warranted by the general prayer. *Wilkin, et al, vs. Wilkin,* 1 *John. Ch. R.* 111. *Field vs. Beeler,* 3 *Bibb.* 18. *Crews vs. Pendleton, &c.* 1 *Leigh.* 297. The defence founded upon the forbearance of the mortgagee is equally untenable; such forbearance, unless continued for twenty years, being applauded, rather than condemned, and censured by the courts. *Hudson vs. Warner and Vance,* 2 *Har. and Gill,* 415. *Holmes, et al, vs. Crane,* 2 *Pick. Rep.* 610. *Haven vs. Low,* 2 *New Hamp. Rep.* 13.

RANDALL, for the appellee.

It is shown by the evidence, that the boy which alone is the subject of the present controversy, was constantly in the possession and use of the appellee, and consequently, there was no necessity for recording the bill of sale.

1. In a court of equity, the mortgagor is esteemed the real owner, and the mortgagee merely an incumbrancer. 1 *Cov.*

*Powl.* 159.   2 *Doug.* 630, and the former is entitled to the rents and profits.    *Cov. Powl.* 155, 157.   4 *Kent Com.* 158, and with respect to slaves, their owners have an interest in the issue, distinct from the parents, as is evident from the power to manumit future increase by the owner of the mother. The property in such increase, is considered as wholly separate and independent of the parent.    One may be entitled to the one, and another to the other, and consequently, although the mortgagee may be regarded as the owner of the mother, it by no means, follows that he is the proprietor of the issue.

In the case before the court, sound policy clearly forbids a decision in favour of the appellants.    The issue is not mentioned in the mortgage, and therefore, the public have no means of knowing where the title is, and they should be secured in dealing with the possessor, as the legal proprietor. If in so doing, the rights of the mortgagee are invaded, he has no one to blame but himself, for not introducing expressions into the instrument under which he claims, by which the public would be put upon their guard.    Without such expressions, strangers would be exposed to imposition. *Watkins vs. Harwood,* 2 *Gill and John.* 310.    When the boy in question was conveyed to the appellee, how could he know that he was touched by the mortgage ?   He was not mentioned *eo nomine,* nor were words used, calculated to put him upon the inquiry.    If then, an innocent party is to suffer, the blow should fall upon him, by whom the mischief has been inflicted.

But independently of this view, which so strongly recommends itself upon principles of public policy ; and considering the issue of female slaves, in the light merely of rents and profits, the claim of the appellants to have them sold for the payment of their debt cannot be justified, because, though a mortgagee in possession, may be entitled to the rents and profits, it is only when he is in possession, that he is so entitled ; and then he must account for them, as an offset to the interest on the mortgage debt.    He does not take them as his own absolutely, and unaffected by the rights of the mortgagor.

2. There is evidence to show, that the appellants knew of the possession of the appellee, and knowing it, they were bound promptly to assert their rights if they had any, least by their laches, (as has actually resulted, the remedy of the appellee over against the mortgagor, for the purchase money should be lost. The appellants not only permitted the appellee to rely upon his title, as a good one, but to incur the expense of raising the boy. Although therefore, as a general rule it may be true, that the mortgagee injures himself by forbearing; he does not do so, when the subject of the mortgage is young negroes. In such a case, if he can have them raised and rendered more valuable by third persons, he benefits himself at their expense, which in legal construction is a fraud.

3. Limitations are a bar, and the defence is well set up in equity, where it is seldom formally pleaded, it being always sufficient to rely upon it, no matter how informally, provided the party against whom it is to operate has notice. In controversies among creditors, the course of the court is to receive the objection at any time, regardless of the manner in which it may be interposed. Substance, and not form is aimed at, and when the former is accomplished, the court never listens to objections founded upon the latter.

STEPHEN, Judge, delivered the opinion of the court.

The question presented by the record to this court for adjudication is a new one, and has now for the first time engaged its attention. In deciding upon it, but little assistance can be obtained by an appeal to the rules and doctrines of the *English* law, and the only aid which can be derived from that source, must be drawn from a course of reasoning, founded upon the grounds and principles of analogy, as the *English* jurisprudence does not recognize the rights of property, in the subject matter upon which the mortgage in this case is made to operate.

In the discussion of this subject, the relative rights of mortgagor and mortgagee are involved, and upon them essen-

tially depends the issue of this controversy.   The nature and extent of these rights respectively, this court upon a recent occasion was called upon to decide ; and perhaps it is not going too far to say, that the views then entertained and expressed by this tribunal, must very materially influence the decision of this case.   In 6 *Gill and John.* 74, this court say, " upon the execution of the mortgage the legal estate becomes immediately vested in the mortgagee, and the right of possession follows as a consequence, subject only to the occupancy of the mortgagor, which is only tacitly permitted until the will of the mortgagee is determined.   It is said in 1 *Powel on Mortg.* 171, that as soon as an estate in mortgage is created, the mortgagee may enter into possession, but as the payment of interest is the principal object of the mortgagee, he seldom avails himself of that right, unless obliged so to do, to receive the payment of the interest, or with a view to compel the payment of the money."

Of the accuracy of the preceding view of the relative rights of the mortgagor and mortgagee, no doubt can be entertained, because, it necessarily results from the legal operation of the terms of the instrument, by which the mortgage is created. By the deed of mortgage, the legal estate becomes vested in the mortgagee, defeasible at law upon the performance of the condition and payment of the money at the time stipulated ; but upon default of the mortgagor in the non-payment of the money at that time, it becomes indefeasible at law, and defeasible only in equity, where the mortgage is considered only as a security for the debt, and the mortgagor, notwithstanding his default, will be permitted to redeem.   It is true in 2 *Burr.* 978, *Lord Mansfield,* in delivering the opinion of the court, says, " a mortgage is a charge upon the land, and whatever would give the money, will carry the estate in the land along with it, to every purpose.   The estate in the land is the same thing as the money due upon it.   It will be liable to debts ; it will go to executors ; it will pass by a will, not made and executed with the solemnities required by the statute of frauds.   The assignment of the

debt, or forgiving it, will draw the land after it as a consequence; nay it would do it, though the debt, were forgiven only by parol; for the right of the land would follow, notwithstanding the statute of frauds."

But in *Doug. Rep.* 22, his lordship at a later period of his judicial life, in deciding that a mortgagee might recover in *ejectment*, (without giving notice to quit) against a tenant claiming under a lease from the mortgagor, granted after the mortgage without the privity of the mortgagee, held the following language, " when the mortgagor is left in possession, the true inference to be drawn is an agreement, that he shall possess the premises at will in the strictest sense, and therefore, no notice is ever given him to quit, and he is not even entitled to reap the crop, as other tenants at will are, because all is liable to the debt, on payment of which the mortgagee's title ceases. The mortgagor has no power express or implied, to let leases not subject to every circumstance of the mortgage." And the *Supreme Court of the United States*, in speaking upon the subject of the title passed by the deed of mortgage, and the interest acquired by the mortgagee, in the thing mortgaged, express themselves in the following terms, " it is true that in discussions in courts of equity, a mortgage is sometimes called a lien for a debt; and so it certainly is, and something more. It is a transfer of the property itself, as security for the debt. This must be admitted to be true at law, and it is equally true in equity, for in this respect equity follows the law.

" It does not consider the estate of the mortgage as defeated and reduced to a mere lien, but it treats it as a trust estate, and according to the intention of the parties as a qualified estate and security. When the debt is discharged there is a resulting trust for the mortgagor. It is therefore only in a loose and general sense, that it is sometimes called a lien, and then only by way of contrast to an estate absolute and indefeasible." From these decisions, it results that the mortgagee must be considered as having an estate or interest in the subject matter of the mortgage, not absolute it is true,

because such an estate is not imported by the terms of the mortgage deed, but an interest commensurate with the object contemplated to be attained by it, as a security for the payment of the debt due from the mortgagor to the mortgagee. From these general views and considerations, relative to the respective rights of the parties to the instrument of mortgage, we are led to the consideration of the question arising in this case, and involved in the decision of this controversy. And that question is, whether the issue of a female slave, herself, the subject of the mortgage, born after the title of the mortgagee has become absolute at law, and during the possession of the mortgagor, is liable for the payment of the mortgage debt. For it must be borne in mind, that the question is not, whether the mortgagee is entitled to hold the issue as his own property in absolute right, but as security for the payment of his debt only. Upon the fullest consideration we have been able to bestow upon the subject. aided by all the lights and information with which we have been furnished, by an examination of the decisions of the courts of our sister *States* upon similar subjects, we have come to the conclusion that right and justice require, that the issue so born should be liable, and that neither the principles of law or equity forbid it. In the language of *Lord Mansfield*, before adverted to, when speaking of the growing crop, when possession is taken by the mortgagee, we think, "all is liable to the debt on payment of which the mortgagee's title ceases."

This identical question has been decided in the *State of Kentucky*, and there put to rest. The case may be found in 1 *Litt.* 317, where the court speak as follows, "nor can there be any doubt, but that the children born of *Fanny*, after the execution of the mortgage, are as much liable as *Fanny* herself is, for it is a settled rule, that the offspring belongs to the owner of the mother, for *partis sequitur ventrem*, is a maxim of the common, as well as of the civil law."

In the case before this court, the title of the mortgagee had become absolute at law when the issue was born. In a court

of law therefore, his title to the mother had then become absolute and indefeasible, and he must of course be entitled at law to her offspring born during such his title, subject to the equitable right of the mortgagor to redeem in equity, on payment of the mortgage debt. This view of the subject is confirmed by the rule of law which is held to prevail in a case somewhat analogous. In *Story on Bailments*, 200, he says, " by the pledge of a thing, not only the thing itself is pledged, but also as accessory, the natural increase thereof— as if a flock of sheep are pledged, the young afterwards born are also pledged." And if such is the principle in the case of a pledge, where only a special property passes a *fortiori*, ought the rule to obtain in the case of a mortgage, where the whole legal title passes conditionally to the mortgagee, and more especially where by forfeiture, the title has become perfect and absolute at law. In page 197, the same author in speaking of the difference between a mortgage of goods, and a pawn, says, " a mortgage of goods is in the common law, distinguishable from a mere pawn. By a grant or conveyance of goods in gage or mortgage, the whole legal title passes conditionally to the mortgagee, and if not redeemed at the time stipulated, the title becomes absolute at law, though equity will interfere to compel a redemption. But in a pledge a special property only, as we shall presently see, passes to the pledgee, the general property remaining in the pledger."

We do not deem it necessary, further to discuss this question, or to extend our remarks for the purpose of proving the justice of the claim of the mortgagee ; though much might be said under that aspect of the case, as we consider the law to be clearly established in his favour. We will only remark in conclusion, that we are happy to find that in this instance, the law of the land, and the law of nature, so far from being at variance are in perfect harmony ; and that whilst on the one hand, full and ample justice will be administered to the honest creditor, the claims and feelings of nature will not be violated on the other.

We do not think, that the defence founded upon the bar arising from the act of limitations, can avail the appellee in this case, even if he has placed himself in a situation to claim the benefit of it, because the proof in the cause does not bring home to the appellants, or either of them, a knowledge of his adversary claim, for a sufficient length of time to make the bar available.

Upon the whole we think, that the decision of the court below was incorrect, and ought to be reversed with costs in both courts.

DECREE REVERSED WITH COSTS IN BOTH COURTS.