(Decided 3rd November, 1887.)

THE COUNTY COMMISSIONERS OF SOMERSET COUNTY *vs.* ANNA M. MINDERLEIN.

*Evidence—Cross-examination—Bias or Prejudice of Witness.*

Evidence showing the true relation and disposition of a witness to the parties to the cause, and the subject-matter of litigation, should be admitted to enable the jury to form a proper estimate of the value of his testimony.

County Commrs. of Somerset County *vs.* Minderlein.

In an action against County Commissioners to recover damages for personal injury sustained whilst travelling on a public road by reason of its defective condition, a witness for the plaintiff who had testified that the road was greatly out of repair, and in bad condition, may be asked on cross-examination, for the purpose of showing bias or prejudice on his part against the supervisor of the road, whether, at the time of the trial, he is on "good terms" with the supervisor, and whether he had not been engaged in a bitter controversy with the friends of the supervisor in reference to his appointment, and whether he did not entertain feelings of animosity towards the County Commissioners on account of such appointment; for although the supervisor was not a technical party to the action, yet if the defective condition of the road which occasioned the injury, existed in consequence of his neglect of duty, he was liable over to the defendants for the damages they might be required to pay as the natural result of his negligence.

APPEAL from the Circuit Court for Wicomico County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, and BRYAN, J.

*Henry Page,* for the appellants.

The general rules of law, applicable to the subject of proving bias in the mind of the witness, are not doubtful. "The situation of the witness, with respect to the parties, and *to the subject of litigation,* his interest, his inclination and prejudice," &c., may all be fully investigated on cross-examination. 1 *Greenleaf on Ev., sec.* 446.

Such testimony "may be submitted to the jury, to enable them to determine the value of his testimony." *Blessing vs. Hape,* 8 *Md.,* 33; *Wyeth vs. Walzl,* 43 *Md.,* 432.

While it cannot be said, that Randall Hayman is a party to this suit, his interest in it is directly connected and identified with it, and he may be regarded as the

real defendant, and bias against him, is then the equivalent of bias against the defendant corporation. *Green vs. New River Co.*, 4 *Durn. & East*, 589.

There is no law which restricts such evidence to proof of bias against a party to the suit. It is competent "to show the *animus* of the witness," or "*any other* condition of the witness showing bias." *Wyeth vs. Walzl*, 43 *Md.*, 432.

"A witness may be impeached by proof that his impartiality is affected by *motives* arising from friendship, affection, fear or interest." *Rapalje, Law of Witnesses*, sec. 202; *Johnson vs. Wiley*, 74 *Ind.*, 233; *United States vs. Schindler*, 10 *Fed. Rep.*, 547; 1 *Whar. on Ev.*, (*2nd Ed.*) sec. 545, and authorities there cited.

This seems to be the sum of it all, viz., "Credibility, therefore, so far as it depends upon the capacity for accurate narration is determinable by the ordinary laws of free logical criticism." 1 *Wharton on Ev.*, sec. 408; *Watkins vs. Cousall*, 1 *E. D. Smith*, 65; *Chicago, &c. R. R. Co. vs. Triplett*, 38 *Ill.*, 482; *Sullivan vs. Collins*, 18 *Iowa*, 228.

Partisan sympathy or prejudice often materially affects the testimony of even honest witnesses. "Who is more likely to swear for another through thick and thin, than an associate in a raid which strongly excites partisan sympathy." 2 *Whart. on Evidence*, sec. 419. Partisan prejudice is only the co-relative of partisan sympathy. The latter attracts the witness to the object of sympathy, the former repels from the subject of dislike. In either case witnesses are unwilling to see or narrate anything which is disadvantageous to the one, or of benefit to the other. *People vs. Christie*, 2 *Parker C. R.*, 579.

*James E. Ellegood*, for the appellee.

County Commrs. of Somerset County *vs.* Minderlein.

ALVEY, C. J., delivered the opinion of the Court.

This action was brought against the County Commissioners of Somerset County to recover damages for an injury sustained by the plaintiff, by reason of alleged defects in one of the public county roads, while she was travelling thereon. The case was tried upon the general issue plea, that the defendants did not commit the wrong alleged. And at the trial, three exceptions were taken by the defendants to rulings of the Court, excluding evidence offered by the defendants for the purpose of showing bias or prejudice on the part of a witness examined for the plaintiff.

By the first bill of exception it is shown, that the plaintiff called a witness, Alfred Hayman, by whom she proved that the public road, when and where the accident occurred, was greatly out of repair, and was in bad condition, and that Randall Hayman, the supervisor of the road at the time of the accident, was well aware of its bad condition for some time before the accident happened, but failed to repair the road until after the plaintiff was injured. Thereupon, the defendants, on cross-examination of this witness, for the purpose of showing bias or prejudice on his part against Randall Hayman, asked the question, whether he and Randall Hayman, the supervisor, were, at the time of the trial, "on good terms;" but, upon objection by the plaintiff, the Court excluded the question, on the ground that Randall Hayman was not a party to the suit. To this ruling the defendants excepted. And in the third exception it is stated, that the defendants, on cross-examination of this same witness, proposed to ask him whether he had not been engaged in a bitter controversy with the friends of Randall Hayman, the road supervisor, with reference to said Randall Hayman's appointment, and whether he, the witness, "did not entertain feelings of animosity towards the (then) County Commissioners, or some of them, on that account." To this ques-

tion objection was made, and the Court sustained the objection, and the defendants excepted. The second exception presents no question that had any relevancy to the matter of inquiry, and therefore, the question proposed to be asked was properly excluded by the Court.

It is true, the supervisor of the road, Randall Hayman, was not a technical party to the action, but if the defective condition of the road which occasioned the accident existed in consequence of his neglect of duty as supervisor, he is liable over to the defendants for the damages that they may be required to pay as the natural result of his negligence. *Ches. & O. Canal Co. vs. Com. of Allegany County*, 57 *Md.*, 201; *City of Chicago vs. Robbins*, 2 *Black,* 418, and same case in 4 *Wall.*, 657. It does not appear whether or not a bond was given by the supervisor for the faithful performance of his duty; but, by the Act of 1867, ch. 290, which has been retained and continued in force by the Acts of 1868, ch. 299, and 1884, ch. 340, as to Somerset County, it is made the duty of the County Commissioners of Somerset County to require the several road supervisors appointed by them to give bond to the State, for such sum as they may deem proper, conditioned for the faithful performance of the duties required of such supervisor; and it is provided that such bond may be put in suit for the benefit of any person suffering by the neglect of the supervisor to keep the roads in his district in proper order and repair. It is but reasonable and just to presume that such bond was required, and was in fact given by the supervisor, whose conduct was involved in this case. But whether such bond was given or not, it can admit of no doubt that the supervisor is liable for the consequences of his neglect of duty; and if the defendants are required to pay damages, by reason of such neglect, they have their remedy over against the supervisor.

Such then being the relation and liability of the supervisor to the defendants, though not a technical party upon

the record, the question is, whether evidence of feelings of hostility to him, that might influence a witness, examined on the part of the plaintiff, to exaggerate or give false color to his statements, prejudical to the defendants, be admissible to *impeach the impartiality* of such witness?

It is certainly of primary importance, in determining matters of fact, dependent upon human testimony, that the general *status* of those who testify should be fully understood by the jury. The true relation and disposition of the witness to the parties to the cause, and the subject-matter of litigation, should be made to appear, to enable the jury to form a proper estimate of the value of his testimony; and the evidence of such relation and disposition of the witness is in no sense irrelevant to the subject-matter of inquiry. This is a well settled principle of evidence, and is of daily application. *Blessing vs. Hape,* 8 *Md.,* 31; *Wyeth vs. Walzl,* 43 *Md.,* 426.

As said by Chief Baron POLLOCK, in the case of *Atty.-General vs. Hitchcock,* 1 *Exch.,* 100. "It is certainly allowable to ask a witness in what manner he stands affected towards the opposite party in the cause, and whether he does not stand in such a relation to that person as is likely to affect him, and prevent him from having an unprejudiced state of mind, and whether he has not used expressions importing that he would be revenged on some one, or that he would give such evidence as might dispose of the cause in one way or the other. If he denies that, you may give evidence as to what he has said, not with the view of having a direct effect on the issue, but to show what is the state of mind of the witness, in order that the jury may exercise their opinion as to how far he is to be believed." In the same case, Baron PARKER said, "It may be shown that the witness acted through motives of malice, as every man who comes into the witness box must come prepared to show that he gives his evidence from pure motives; and such evidence as shows he does not, would

be admissible against him." He ought, however, to have an opportunity of explaining the impeaching evidence proposed to be produced against him. 2 *Brod. & B.*, 312. And in the same case, just quoted from, Baron ALDERSON said: "The witness may be asked as to his state of equal mind, or impartiality, between the two contending parties, questions which would have a tendency to show that the whole of his statement is to be taken with a qualification, and that such a statement ought really to be laid out of the case for want of impartiality." And so in the case of *Merrills vs. Law*, 9 *Cow.*, 65, it was held, that bad terms, or want of good understanding, between a witness and the party against whom he was called to testify, or the *endorser* of that party, was matter of credit to be considered by the jury.

Upon these well recognized principles of evidence, applicable as means to prevent imposition upon Court and jury by a biased or prejudiced witness, this Court is of opinion that there was error in the rulings of the Court below, in excluding the questions asked of the witness, as stated in the first and third bills of exception. For though the supervisor, Randall Hayman, was not a technical party to the record, yet his relation to the defendants, and his liability over for the consequence of his neglect, if by his negligence the injury was sustained, clearly placed him in such position as to be within the reason of the principle to which we have referred. Moreover, as stated in the third exception, it was proposed to show the animosity of the witness to the defendants, or some of them, as well as to the supervisor. The inquiry of the witness was not collateral, but was material and important, in order to disclose the motives and temper with which he testified, in regard to the parties and the subject-matter of investigation. We must therefore reverse the judgment and award a new trial.

*Judgment reversed, and*
*new trial awarded.*

(Decided 3rd November, 1887.)