# EDMUND B. DUVAL *vs.* LOUIS BECKER.

*Abandonment of Easement of Right of Way by Mortgagor—Right of Purchaser at Foreclosure Sale to all the Estate Conveyed by the Mortgage—Abandonment of Easement by Act in Pais.*

A mortgagor cannot before default, by his own act and without the consent of the mortgagee, abandon an easement appurtenant to the estate and expressly included in the mortgage, so as to bind the mortgagee or prevent the easement from passing to the purchaser upon a foreclosure sale, although the security of the mortgage debt may not have been impaired by such abandonment.

The doctrine that the mortgagor, while in possession and before foreclosure, is treated as the real owner of the property, does not apply between mortgagor and mortgagee ; and the mortgagor can-

not by his own act release the easements appurtenant to the mort-
gaged estate, or force the mortgagee to accept as security for the
payment of the debt anything less than the entire estate originally
granted.

The acts *in pais* relied on to constitute an abandonment of a right of
way must be of a decisive character, and done by the party against
whom they are invoked, or by one under whom he claims.

Appeal from a judgment on verdict of the Superior Court
of Baltimore City (RITCHIE, J.)　The case is stated in the
opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN,
MCSHERRY, FOWLER, BRISCOE, ROBERTS and BOYD, JJ.

*John Prentiss Poe, Attorney-General,* and *Edgar Allen
Poe* (with whom was *R. M. Ridgely* on the brief), for the
appellant.

The ·question presented upon this appeal is this, viz:
May a mortgagor in possession before default, lawfully
abandon a right of way appurtenant to the mortgaged prop-
erty, over an adjacent tract belonging to the mortgagor, in
fee simple, when such abandonment does not impair, but,
on the contrary, increases the value of the mortgaged prop-
erty; and may a subsequent purchaser of the mortgaged
property, with actual knowledge of the abandonment and
actual closing of such way, and after the foreclosure sale
and full satisfaction of the mortgage debt, maintain an
action for its obstruction against the purchaser of the ad-
jacent tract through which the way passed?

Apart from the effect of the mortgage, the right of way
appurtenant to the land owned by the appellee, over the
land owned by Mrs. Du Val, the wife of the appellant, was
extinguished as the necessary legal effect of the unity of
title held by H. Webster Crowl, in both the dominant and
servient tenement.　*Oliver* v. *Hook*, 47 Md. 301.

Also, apart from the mortgage, the sale, on the 30th of
March, 1889, by H. Webster Crowl, of the servient tene-
ment without any reservation whatsoever to himself as the

then owner of the dominant tenement, of the right of way in question, operated as a complete abandonment and relinquishment of such right of way. *Mitchell* v. *Seipel*, 53 Md. 251.

The existence of the mortgage did not deprive Mr. Crowl, as the owner of the dominant tenement, of the right to close up and abandon the private way through and over the servient tenement, for the reason that mortgages in Maryland are now only treated as a security for a debt, and that the owner of the equity of redemption of the mortgaged property in possession thereof and before default, is entitled to give up a right of way appurtenant to the mortgaged property, wherever such abandonment does not in any degree, or to any extent, impair the security of the mortgagee. Mortgagors in possession before default are, to all intents and purposes, regarded as the owners of the mortgaged property, and may deal with it as they please, provided such dealing, use and management do not injuriously affect the mortgagee's security. *A. E. R. R.* v. *Gantt*, 39 Md. 139 and 140; 1 *Jones on Mortgages*, secs. 11, 12 and 34; 15 *Am. and Eng. Encycl. Mortgages*, 730-738.

The testimony in this case shows that the plan of improvement carried out by Crowl, as mortgagor in possession of the property now belonging to the appellee, and as the owner of the adjacent property, enhanced the value of the security, and, therefore, the mortgagee and all claiming under him cannot lawfully object to the closing up of said road and the abandonment of such right of way, nor maintain an action for its obstruction. *Vogeler* v. *Geis*, 51 Md. 407; *Glenn* v. *Davis*, 35 Md. 208.

Inasmuch as the private road in question was actually closed and abandoned long before Bayless bought the property, on the 2d of January, 1891, and inasmuch as when he bought it, he had actual knowledge that the private road in dispute had been actually closed up and abandoned, and inasmuch as the appellee, when he bought the property on

the 26th of March, 1891, also, well knew that the road had been actually closed up and abandoned, the appellee is not entitled to maintain the suit, for having bought the property at a time when the road in question was actually closed and no longer visible, he is not now at liberty to claim an easement which did not exist at the time of his purchase. There was no easement in existence when the appellee bought his property. The purpose of the mortgage had been fully accomplisned. The mortgage debt was paid, and the mere insertion in the appellee's deed of an erroneous reference to a right of way, which visibly and notoriously did not exist, cannot revive it, so as to give the appellee, without injury or pretense of injury, a right of action. *Vogeler* v. *Geis*, 51 Md. 411.

*Randolph Barton* and *Randolph Barton, Jr.*, for the appellee.

We have here the case of a mortgagor surrendering a right of way appurtenant to the mortgaged property, and attempting to open another way, through other property, likewise subject to a mortgage, without the consent in either case of the mortgagee; of both mortgages being subsequently foreclosed by their respective holders, of the mortgaged properties being both advertised for sale, and sold without reference or regard to such subsequent acts of the mortgagor.; and of the question subsequently arising between the purchaser of the property entitled to the way abandoned by the mortgagor, and the owner of the property in whose favor the right had been abandoned, as to the effect of the abandonment by the mortgagor.

On this state of facts, the Court is called upon to decide: 1st. Whether a mortgagor can, without the acquiescence and consent of the mortgagee, so impose easements and servitudes upon the mortgaged premises, or so abandon rights appurtenant thereto, that the mortgagee, both before and after default, is bound thereby, and that upon foreclosure the property must be sold, and the purchaser take

title, subject to such alterations, even although the security of the mortgage debt is not thereby impaired? 2nd. If not, is there any evidence in this case legally sufficient to show such acquiescence on the part of the mortgagee?

3rd. If, on the contrary, the mortgagor does possess such power, is there still any evidence in this case that the security of the mortgaged debt was not in fact impaired by the abandonment by the mortgagor of said right of way?

4th. When the equity of redemption in two adjoining parcels of land, each subject to a mortgage, to different parties, becomes vested in the same owner, does an easement appurtenant to one of said lots, in the adjoining lot, become extinguished *as against the mortgagee*, of said dominant tenement by the mere fact of the unity of ownership of the *equity of redemption* in the two lots, in the same party; provided the security of the mortgage debt secured by the mortgage upon said dominant tenement be not thereby impaired?

5th. Assuming that a mortgagee's rights are not affected by the abandonment by the mortgagor of an easement in the mortgaged property, can the mortgagee transmit such rights to his assignee, or to a purchaser under a foreclosure sale, or does *mere knowledge* of said abandonment, on the part of such assignee or purchaser, estop him to question said abandonment, even though inoperative as against his assignor?

6th. Is the mere fact that a party entitled to a right of way (not a way of necessity) subsequently acquires a better way or outlet for his property, sufficient in law or in equity to prevent him recovering (at least nominal damages) against a defendant, for occupying and obstructing said former right of way; provided the renewal of the use by the plaintiff, of his said way will be annoying and injurious to said defendant, and of no corresponding advantage to the party legally entitled thereto?

We submit that no one of these questions can be affirmatively answered. 2 *Jones on Mortgages*, sec. 1654; *Mur-*

*phy* v. *Welch*, 128 Mass. 489; *Harlow.* v. *Whitcher*, 136 Mass. 553; *Union Hall Asn.* v. *Morrison*, 39 Md. 290; *Reynolds* v. *Ins. Co.*, 34 Md. 289; *Tongue's Lessee* v. *Nutwell*, 17 Md. 230; *Schaidt* v. *Bland*, 66 Md. 148; *Vogeler* v. *Geis*, 51 Md. 410; *Arnd* v. *Amling*, 53 Md. 200; *Capron* v. *Greenway*, 74 Md. 289; *Glenn* v. *Davis*, 35 Md. 215.

McSHERRY, J., delivered the opinion of the Court.

The facts out of which the questions now before us arise, are as follows: In 1877 Dodson and wife executed to H. A. Thompson a mortgage upon a lot of ground then situated in Baltimore County, but now lying within the limits of Baltimore City, which lot we will designate Lot A. The only means of access to this lot was over a private right of way across what is now the Duval lot, which adjoins Lot A on the east. This right of way, whose centre line was clearly defined by courses and distances, was specifically included, by accurate description, in the above named mortgage. The mortgage was subsequently assigned by Thompson to Loney, and then by Loney to Hughes, and finally by Hughes to Whelan. Whelan foreclosed it in November, 1890. At the sale Taylor bought the Lot A, and it was duly conveyed to him after the sale had been ratified. He afterwards sold the same lot to Bayless, who, on March 26th, 1891, conveyed it to the appellee, Becker. In the advertisement of the foreclosure sale, and in the deeds from Whelan to Taylor, from Taylor to Bayless, and from Bayless to Becker, the right of way is described in precisely the same terms that are used in the Dodson mortgage. Thus, according to the record evidence before us, Becker, the appellee, has, by the conveyances alluded to, a clear paper title to the right of way. In 1883 H. Webster Crowl acquired the equity of redemption in this Lot A, and in a lot adjoining it on the south, and binding on North avenue. This last named lot we will call Lot B. Crowl owned, in addition, the fee-simple of several lots adjoining on the east, one of them being the Duval lot,

or the one over which the right of way appurtenant to Lot A was located. In 1888 or 1889 he closed up this right of way over the Duval lot, then owned by him in fee, and opened without the consent of the mortgagee, then holding the mortgage on Lot B, a different way across Lot B, from North avenue to Lot A. The mortgage on Lot B was subsequently foreclosed and without any reference to or mention of this new way so laid out by Crowl, and called by him Windsor avenue, Lot B was sold and conveyed to Spaulding, who later on conveyed it to Becker, the appellee. After closing up the first named right of way over the Duval lot by building a terrace on the bed thereof, Crowl conveyed the servient tenement, over which the right of way described in the Dodson mortgage extended, to Llewelyn without any reservation in the deed of the right of way at all. Through several *mesne* conveyances the title to this lot—now called the Duval lot—finally became vested in the appellant's wife. In May, 1893, the appellant—the husband of the owner of the Duval lot—erected a wire fence across the route of the private way described in the Dodson mortgage, and thereupon this suit was brought against him by the appellee, Becker—the owner of Lots A and B—for obstructing his, Becker's, use of said way. Upon the trial in the Superior Court of Baltimore City a single exception was reserved, and that brings up for review the rulings of the learned trial Judge upon the prayers for instructions to the jury. The verdict and judgment were in favor of the plaintiff, and the defendant, Duval, has appealed.

At the instance of the plaintiff, Becker, who is the appellee in this Court, the jury were instructed in substance, that under the papers offered in evidence, being the deeds and record evidence to which brief reference has been made, the right of way appurtenant to Lot A, over and across the Duval lot, was included in the Dodson mortgage; that the mortgaged property, including the right of way, was sold, and the title thereto passed by regular conveyances to the

plaintiff; and that if the jury should find that the appellant had thereafter erected the wire fence described in the evidence, and had thereby obstructed the said way, "then the plaintiff is entitled to recover * * * * unless they find that said Hughes, Whelan, Bayless or Taylor acquiesced in the abandonment or closing of said right of way before the said plaintiff purchased the property so covered by said mortgage; and they are instructed that there is no evidence legally sufficient in the case to show such acquiescence."

The defendant asked four instructions, all of which were refused. By the first he requested the Court to say to the jury that under the various deeds Crowl, when he purchased the equity of redemption in Lots A and B, and the fee-simple in the Duval lot, became the owner of these several lots, and by virtue of the unity of the title thereby acquired in said lots the right of way which prior to the union of such titles had been appurtenant to Lot A over the lot now owned by Duval, became and was extinguished; and the plaintiff was not entitled to recover, provided the jury should find that the Dodson mortgage on Lot A was not due and in default when the titles united, and that the extinguishment of the right of way did not impair the security of the mortgage debt. By the second prayer he asked the Court to rule that the omission from Crowl's deed conveying to Llewelyn what is now the Duval lot of a clause reserving any right of way in favor of Lot A over the servient estate, operated in law as an extinguishment of the right of way which previously existed; and the plaintiff would not be entitled to recover, provided the jury should find that the Dodson mortgage on Lot A was not due and in default when the conveyance to Llewelyn was made, and that the extinguishment of the right of way did not impair the security of the mortgage debt. The third prayer is founded on the theory that if Hughes, before he purchased the Dodson mortgage, went upon the property and saw that Crowl had abandoned the old road, and thereafter became the

assignee of the mortgage, and if Bayless, when he bought from Taylor, also knew of this abandonment, and if the plaintiff when he bought from Bayless was likewise apprised thereof, and subsequently used the Windsor avenue way opened by Crowl over Lot B; and if the closing of the original private way occasioned the plaintiff no damage prior to the institution of the suit, and the Windsor avenue way was a shorter, better and more convenient way for the plaintiff, and that the re-opening of the other way over the Duval lot will be injurious to the defendant and be of no benefit to the plaintiff, then the plaintiff is not entitled to recover. The fourth prayer denies the plaintiff's right to recover if Bayless and the plaintiff knew that Crowl had abandoned the old and opened up a new right of way.

It is thus apparent that the question lying at the very root of the controversy is, whether a mortgagor can before default by his own act, and without the consent or acquiescence of the mortgagee, and as against the latter, abandon an easement appurtenant to the estate mortgaged, which easement is in express terms included within and covered by the lien of the mortgage, and can by such abandonment so bind the mortgagee that, though upon foreclosure the property and appurtenant easement are sold together as an undivided entirety, precisely as conveyed by the mortgage, yet they are to be treated as so completely severed by the abandonment on the part of the mortgagor as that the easement is in fact extinguished, if the security of the mortgage debt has not been ultimately impaired by such abandonment. The solution of this question, which involves an examination into the extent and nature of the mortgagee's interest and estate is, we think, free from serious difficulty.

It is true that when the same person becomes the owner of the dominant and servient estates, and there is no intervening or outstanding interest or title held by some one else in or to the appurtenant easement, the unity of the two estates in the one individual necessarily extinguishes and merges the easement appurtenant to the dominant estate,

because no person can have an easement in the land which he himself owns. *Capron* v. *Greenway*, 74 Md. 289. And it is equally true, that when the same person acquires both the dominant and servient estates, and conveys away the latter without reserving the pre-existing easement to himself, this operates as an abandonment by the grantor of the easement, in so far as it was enjoyed by him, for the reason that a grantor shall not derogate from his own grant. *Mitchell* v. *Seipel*, 53 Md. 269.

But neither an extinguishment in the mode indicated, nor an abandonment by the method just named, can be permitted to operate against a third party claiming an interest in the same easement, even though such third party be merely a mortgagee. The equity doctrine that a mortgage is a mere security for the debt and only a chattel interest has, by a gradual progress, been adopted by the Courts of Law, and the harshness of the common law, which looked to form only and treated a mortgage after condition broken as in all respects an absolute conveyance, has been materially mitigated. *Phelps Juridical Eq.*, sec. 196. Hence, as stated by CHANCELLOR KENT (4 Com. 160), "except as against the mortgagee, the mortgagor while in possession and before foreclosure, is regarded as the real owner." He has, therefore, an insurable interest in the mortgaged property, *Ins. Co.* v. *Kelly*, 32 Md. 421, and may recover damages for injuries done thereto. *A. & E. R. R. Co.* v. *Gantt*, 39 Md. 140; *Arnd* v. *Amling*, 53 Md. 200; and notwithstanding a default is permitted to redeem in equity. *Bank of Commerce* v. *Lanahan, Trustee*, 45 Md. 407. But whatever his relation to the property may be as respects third persons, the doctrine that he is regarded as the real owner of the mortgaged property is subject to the express qualification that the mortgagee is not included. The doctrine applies "except as against the mortgagee." As between the mortgagor and mortgagee, "by the legal, formal mortgage * * * * the property is conveyed or assigned by the mortgagor to the mortgagee, in form like that of an

absolute legal conveyance, but subject to a proviso or con-
dition  *  *  *  *  *  and upon non-performance of this
condition, the mortgagee's conditional estate becomes abso-
lute at law, and he may take possession thereof, but it
remains redeemable in equity during a certain period." *Bank
of Com.* v. *Lanahan, supra ; Jamison* v. *Bruce,* 6 G. & J. 72 ;
*Evans & Iglehart* v. *Merrikin,* 8 G. & J. 39. And in the
recent case of *Cahoon* v. *Miers,* 67 Md. 576, where the ques-
tion was whether the offspring born of mortgaged live stock,
after the execution of the mortgage, belonged to the mort-
gagor or to the mortgagee, the late JUDGE MILLER, speaking
for this Court, said, that our predecessors, in deciding the
case of *Evans & Iglehart* v. *Merrikin, supra,* rested their con-
clusion upon the legal effect and operation of the mortgage
as between the mortgagor and mortgagee. " They said,"
continues the opinion in *Cahoon* v. *Miers,* " and upon ample
authority that a mortgage does something more than merely
create a lien for the debt ; that upon its execution the legal
estate becomes immediately vested in the mortgagee and the
right of possession follows as a consequence  *  *  *  *  ; that
this legal estate is defeasible at law upon the payment of the
mortgage debt at the time stipulated, but if this is not done,
then it becomes indefeasible at law and defeasible only in
equity.  *  *  *  *  From this view of the nature and
effect of a mortgage, they say it results that the mortgagee
must be considered as having an estate or interest in the
subject-matter of the mortgage, not absolute, it is true,
because such an estate is not imported by the terms of the
instrument, but an interest commensurate with the object
contemplated to be attained by it as a security for the pay-
ment of the debt."  *  *  *  *  "But at law the title all
the while is in the mortgagee.  *  *  *  *  That decision
(8 G. & J. 39) has been acquiesced in and recognized as
the law of the State for more than half a century, and we
see no good reason for overruling it now." As between
the mortgagor and mortgagee, therefore, the doctrine that
the mortgagor is regarded as the real owner, does not, and

in view of the quality of the estate conveyed by the mort-
gage, cannot obtain to the extent of permitting the mortgagor
by his own act to exempt from the lien and operation of the
mortgage any part of the mortgaged property. It gives
him no authority to dismantle the mortgaged estate of its
appurtenant easements, and no power to force the mortgagee
to accept as security for the payment of the debt, anything
less than the entire estate originally granted. After the
mortgage has been executed and delivered, and the security
it was intended to afford has been accepted, it does not lie
within the power of the mortgagor to withdraw or to cut
out from the lien thus created any portion of the property
actually conveyed. A contrary doctrine as between the
mortgagor and mortgagee would jeopardize, if it did not
wholly destroy, the stability of every mortgage security;
and there is neither principle nor precedent to justify its
adoption. It would lead to endless confusion, and would
cause the mortgagee's lien, whose range and latitude ought
to be fixed by the mortgage itself, to depend in a large
measure upon, and to be guaged as to its scope by the
accidental circumstance that the property as stripped of its
appurtenant easements might happen to sell, when sold
under foreclosure, for sufficient to pay the mortgage debt,
instead of allowing the lien to cover during the whole period
the mortgage remains in force the precise property originally
conveyed.

As, then, there is by force of the mortgage, an estate or
interest in the subject-matter of the mortgage vested in the
mortgagee as between him and the mortgagor, which the
latter cannot by his own act impair or alter, it necessarily
follows, even if there were no explicit legislative enactment
to the same effect, that the purchaser, under a sale made
by the mortgagee, is entitled to precisely the same subject-
matter which the mortgagee was empowered upon default
to sell, and did in fact make sale of, according to the terms
and pursuant to the powers contained in the mortgage.
But the Code precludes all controversy as to this conclusion,

for by sec. 11 of Art. 66 it is expressly declared, that "all such sales, when confirmed by the Court and the purchase money is paid, shall pass all the title which the mortgagor had in the said mortgaged premises at the time of the recording of the mortgage." By this provision the purchaser at the sale made by Whelan succeeded to the estate held by Dodson in the mortgaged premises at the time of the recording of the mortgage in 1877, and this estate included the right of way over the Duval lot. Such was undoubtedly the result of the sale when confirmed by the Court, and when the purchase money was paid by Taylor, the purchaser. *Dicks* v. *Logsdon*, 59 Md. 177; *Leonard* v. *Groome*, 47 Md. 504; *Warfield* v. *Ross*, 38 Md. 85. The deed which conveyed the mortgaged premises to Taylor, also in terms conveyed as part thereof, this identical right of way, and each succeeding deed, down to and including the one held by the appellee, expressly includes the same right of way. It results, then, from what we have said, that Becker owns that easement over the Duval lot, unless Hughes or Whelan, who became holders of the Dodson mortgage after Crowl undertook to close up the right of way, or Taylor or Bayless, who became successive owners of Lot A after its sale under the mortgage, acquiesced in Crowl's abandonment or closing of the right of way before the plaintiff purchased from Bayless. There is not the slightest evidence of such an acquiesence. It does appear that before Hughes purchased the Dodson mortgage from Loney he went in company with Bayless to examine the property; that Crowl explained to them his general scheme of improvement, but that nothing was said about the private road, and it was not called to the attention of any one by Crowl. It further appears that, after the sale under the mortgage, Becker also went upon the premises and saw that the road was obstructed by the terrace, but was informed by Bayless that notwithstanding the fact that Crowl had closed it up he, Becker, would be entitled to the right of way. This does not amount to an acquiescence that will

extinguish the easement. Whilst it is settled that a party entitled to a right of way may abandon and extinguish such right by acts *in pais*, without deed or other writing, *Vogler* v. *Geiss*, 51 Md. 410, the acts done here were not done by the party against whom they are invoked, nor by any one under whom the plaintiff claims. The acts relied on were done by Crowl, against and not under whom Becker claims. No holder of the Dodson mortgage, and no one of the persons who have owned Lot A since its sale under the mortgage has done any act, much less any act of a " decisive character " (51 Md. 410) indicating an intention to abandon the easement. The mere cessor of use for a long space of time would be a strong fact to show an intention to abandon the right, *Reg.* v. *Charley*, 12 Q. B. 575 ; but even that circumstance does not exist in the case at bar.

We hold, then, that there was no error in granting the plaintiff's instruction ; and for the reasons we have given, we further hold that the Superior Court was right in rejecting the defendant's first, second, third and fourth prayers. As a consequence the judgment appealed against will be affirmed with costs.

> *Judgment affirmed with costs in this Court and in the Court below.*

(Decided June 19th, 1895.)