Schwoyer *v.* Smith, Appellant.

638

Argued January 9, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

C. *Wilson Austin,* with him *James F. Marx* and *Charles H. Weidner,* for appellants.

*Lloyd M. Schaeffer,* for appellees.

OPINION BY MR. JUSTICE COHEN, April 26, 1957:
Plaintiffs brought suit in the Court of Common Pleas of Berks County to compel the removal of a trel-

lis fence which blocks off use of a passageway through which plaintiffs claim a right-of-way. From a decree of the court *en banc* granting the relief sought, the defendants appeal.

The parties to this cause own immediately adjoining properties on West Main Street, Kutztown. Wholly within the defendants' building, at street level, exists a covered alleyway leading from West Main Street to the rear of both properties. In 1870 the predecessor-in-title of the defendants conveyed the property subject to an easement over the passageway granted to plaintiffs' predecessor-in-title. The reservation was repeated in subsequent conveyances of the servient tenement. On April 1, 1926, George L. Rahn and his wife acquired title to the dominant land, and on December 7 of that year the Rahns also purchased the servient tenement. Subsequently, both properties were sold, without mention of the right-of-way, at separate sheriff sales to satisfy unpaid mortgages.

Plaintiffs introduced testimony to show that the passageway was in continuous use between 1870 and 1926 by the occupants of both buildings. Since 1935 plaintiffs and their immediate predecessors have made use of the passageway although they have entrance to the rear of their property through a public alley, and to the front, directly from West Main Street. The passageway was said to be convenient for the making of business deliveries to the plaintiffs. The fence erected by the defendants in 1948 prevented further use of the passage and prompted the present proceedings. The court below found that the servitude upon defendants' property was plainly visible, continuous, and necessary to the convenient enjoyment of plaintiffs' property. Consequently, the court concluded that the easement was not extinguished even though the dominant and servient tenements were at one time in

the ownership and possession of the same person when in 1926 the Rahns acquired both titles.[1]

The sole issue presented by this appeal is whether the court below was correct in so ruling. Upon the state of the record presented to us, however, we are unable to reach a final determination.

Early in the common law an easement was held to be extinguished when title to the dominant and servient lands came into the hands of the same person. "No man", it was said, "can have an easement in his own land", and the easement was deemed to have been swallowed up in a "merger" of the two estates. *Zerbey v. Allan*, 215 Pa. 383, 387, 64 Atl. 587 (1906). However, "merger is a technical rule at best and so, even though two rights become united in one person, a court of equity will keep them separated if that is required by an outstanding claim of a third party, or is necessary in view of the proprietor's own situation." *1 Glenn, Mortgages*, 288 (1943). In short, "If there is no reason for keeping . . . [the outstanding interest now acquired], then equity will in the absence of any declaration of [the owner's] intention, destroy it, but if there is any reason for keeping it alive, such as the existence of another encumbrance, equity will not destroy it." Sir George Jessel in *Adams v. Angell*, 5 Ch. D. 634, 645 (1877). See also *Hurst v. Spotts*, 294 Pa. 221, 224-25, 144 Atl. 91 (1928); *Carrow v. Headley*, 155 Pa. 96, 97, 25 Atl. 889 (1893); *II American Law of Property*, §10.43 (1952); *Pomeroy, Equity Jurisprudence*, §791 (5th ed. 1941). Accordingly, Pennsylvania has long held to the doctrine that an easement may remain unaffected by unity of estates, or viewed differently, revive upon separation, if a "valid and le-

---

[1] Since the Rahns took both the properties as tenants by the entireties we will treat their ownership as that of a single person. *Cf.* Restatement, Property, §497, comment b. (1944).

gitimate purpose" will be subserved thereby. *McClure v. Monongahela Southern Land Co.*, 263 Pa. 368, 375, 107 Atl. 386 (1919). We recognize, for example, that a tenant in possession of a dominant estate has a sufficient interest in the easement to prevent extinguishment when the fee to the servient estate is united with that of the dominant lands. We adhere, therefore, to the rule that unity of possession as well as title is necessary to destroy an easement. *Witman v. Stichter*, 299 Pa. 484, 489, 149 Atl. 725 (1930); *3 Tiffany, Real Property*, 377 (3rd ed. 1939); *Restatement, Property*, §497, comments c. and d. (1944).

In the instant case equitable interests may have been present which would have prevented the termination of the easement when the Rahns acquired the servient property. The record indicates that the dominant property was separately mortgaged and sold on foreclosure; therefore, plaintiffs claim title through the mortgagee. However, the record is silent as to the nature and terms of the mortgage and the circumstances surrounding its execution. As we shall demonstrate these facts are essential to a proper disposition of this appeal.

The mortgage is, of course (*inter alia*), a security device for the protection of the mortgagee's interest as a creditor. *Glenn, supra*, 171-72. For this reason, "when a mortgage is of record, the mortgagor, although in possession, can pass out of himself no title or interest to the prejudice of the mortgagee." *Glenn, supra*, 238; *Duval v. Becker*, 81 Md. 537, 32 Atl. 308 (1895). (Mortgagor attempted to create an easement in favor of a third party). Patently, the mortgage security includes the value of any easement appurtenant to the mortgaged property.

If, therefore, in the case before us, the Rahns took title to the dominant tract, and executed a mortgage

upon it before acquiring the servient land, then as to the mortgagee, and his successors in interest, the easement would continue to exist; otherwise, the mortgage security would be impaired.[2]

For the same reason, if at the time the Rahns purchased the dominant estate, the property was already encumbered by a mortgage, and the Rahns took subject thereto, the subsequent acquisition of the servient tenement would not extinguish the prior rights of the mortgagee and his successors.

Even if the facts disclose that the mortgage on the dominant property was imposed subsequent to the purchases of both lands, the mortgage instrument may have referred to the easement in the description of the property. In that event, the recital would operate as an express regrant of the easement by the mortgagor as an additional security for the mortgage debt and so prevent the merger.[3]

The *Restatement, supra,* §497, comment d., provides that: "If either a dominant or servient tenement held in fee is subject to a power of termination or to an executory interest, and the fee ownership in the dominant tenement is united with the fee ownership in the servient tenement, the power of termination or the executory interest remains unaffected by such unity.

---

[2] At first glance it might seem that if the mortgagee of the dominant land was also the mortgagee of the servient tenement then the easement should be permitted to merge, since the value lost to the mortgagee on the dominant estate would be compensated for by an increase in the value of the servient land. This result does not necessarily follow. The mortgagor might choose to pay off the charge on the servient land but default on the dominant land's mortgage. Hence the security interest in the dominant land must needs remain unimpaired.

[3] However, if the Rahns had in the interim alienated interests in the servient land, as by mortgage or lease, the recital would be ineffective as to such senior interest holders and their privies.

Accordingly, if the power of termination or the executory interest becomes possessory, the possessory estate is entitled to the benefit, or remains subject to the burden, of the easement."

Upon default of payment of the mortgage debt, the mortgagee has the right to terminate the title holder's estate by compelling the sale of the property. Hence, by analogy, under the *Restatement* view the land transferred by the foreclosing mortgagee is entitled to the benefit of the easement.

On the other hand, if the court finds that the facts of the mortgage fail to give rise to an equitable bar such as we have discussed, then merger occurred and the easement was extinguished.

In the decision below, the court assumed that merger took place, but found that the easement revived by implication upon severance because it was obvious, continuous and reasonably necessary for the enjoyment of the dominant property. We find no basis in the record for the conclusion reached.

Easements by implication arise upon severance as an inference of the intention of the parties to a conveyance of land as drawn from the circumstances under which the conveyance is made rather than from the language of the deed. *Phillips v. Phillips*, 48 Pa. 178, 184-186 (1864); *Restatement, supra,* §476, comment a. It follows that the circumstances which will give rise to an implication of an easement upon an involuntary conveyance, such as the sheriff's deed in the present case, must be more strongly indicative of such an intent than is true in the case of a voluntary conveyance.

Evidence of a long continued prior use is, in itself, insufficient to justify the implication of an easement on severance; some necessity for the continuation of the use must be shown. *Restatement, supra,* §476, comment i. This Court requires that the necessity be

644

"high, real and continuing necessity, as shown by the proved circumstances in the case. . . ." *Witman v. Stichter*, 299 Pa. 484, 489, 149 Atl. 725 (1930). The only evidence adduced to support a plea of necessity was the testimony of a single tradesman that it was convenient to use the alley when making deliveries to the back door of the plaintiffs' home. We believe "necessity" denotes something more than a tradesman's convenience. *Cf. Phillips v. Phillips, supra*, at 185. We are compelled to conclude, therefore, that if merger occurred, the plaintiffs have failed to make out a case of revival on the ground of necessity.

The decree is vacated and the case is remanded for further proceedings in accordance with this opinion. Costs of this appeal to abide the event.