Brian A. PERGAMENT, Respondent,

v.

LORING PROPERTIES, LTD., petitioner, Appellant.

No. CX–98–1031.

Supreme Court of Minnesota.

Sept. 2, 1999.

Robert Lewis Barrows, Leonard, Street and Deinard, P.A., Minneapolis, for appellant.

Lonny D. Thomas, Gregory M. Erickson, Thomas & Associated, P.A., Woodbury, for respondent.

Amicus curiae The Minnesota State Bar Association Section on Real Property Law, Keith E. Ekstrom, Wayzata.

## OPINION

RUSSELL A. ANDERSON, Justice.

We are asked to determine when the mortgage exception to the merger doctrine prevents an easement from being extinguished. We conclude that at the time fee title to the dominant estate is united with fee title to the servient estate, the easement is extinguished with this exception: a mortgagee of the dominant estate will be entitled to the benefit of the easement should the mortgagee's interest become possessory.

In this case, respondent, Brian A. Pergament, brought an action in district court seeking declaratory judgment that he was

entitled to an easement to eight parking spaces in the parking lot of appellant, Loring Properties, Ltd. Relying on the mortgage exception to the merger doctrine, the district court granted Pergament's motion for summary judgment, concluding that Pergament was entitled to the easement, and the court of appeals affirmed the district court. We conclude that the easement had been extinguished and we reverse.

Following a brief description of the chain of title to the property and the applicable standard for evaluating this appeal from summary judgment, we discuss, and apply to the facts of this case, (1) the merger doctrine, (2) whether an extinguished easement is revived when referred to in a subsequent deed conveying the property, and (3) the mortgage exception to the merger doctrine.

### Chain of Title

On September 19, 1986, BSR Properties entered into a contract for deed with Willow Street Properties to purchase property that included an apartment building, an office building and a parking lot. On November 20, 1987, the City of Minneapolis approved a plan to subdivide the property into two separate parcels, one parcel containing the apartment building, the other parcel containing the office building and parking lot. On December 22, 1987, BSR acquired fee title to the apartment building. To obtain the purchase money for this transaction, BSR obtained a loan from Midwest Federal Savings and Loan and agreed to secure the loan with a mortgage to the apartment building.

Before lending BSR the money, Midwest Federal required that BSR obtain from Willow, the contract-vendor, a parking easement for the benefit of the apartment building, allowing use of eight parking spaces in the parking lot adjacent to the office building. This easement was created by a declaration dated December 22, 1987.

On July 28, 1988, BSR paid to Willow the balance due on the contract for deed and acquired fee title to the remaining property, the office building and parking lot. BSR financed the transaction with a loan from Canada Life Assurance Company and, to secure the loan, BSR gave Canada Life a mortgage to the office building and parking lot. By becoming fee owner of the office building/parking lot, as well as the apartment building, BSR united title to the easement's dominant and servient estates.

On December 20, 1990, BSR conveyed the office building/parking lot to Canada Life by deed in lieu of foreclosure. The parking easement was mentioned in the deed. On September 30, 1993, Canada Life sold the office building/parking lot to Loring Properties. The easement was not mentioned in the deed but was referred to in the title insurance policy.

On February 28, 1997, BSR sold the apartment property to Pergament and, incidental to the transaction, Midwest Federal's mortgage was satisfied. Although the deed from BSR to Pergament mentioned the easement, Pergament admitted that he was unaware of it when he purchased the apartment building. From the date the easement was created, all parking spaces in the parking lot were used exclusively in conjunction with the office building and were never assigned to nor used by apartment residents.

### Case History

When Pergament discovered that the easement was mentioned in his deed, he requested that Loring Properties designate eight of the parking spaces in its parking lot for use by apartment residents. Pergament's request was denied and he brought an action in district court for a judgment declaring that he was entitled to an easement for the parking spaces. The district court granted Pergament's motion for summary judgment and the court of appeals affirmed. *See Pergament v. Loring Properties, Ltd.,* 586 N.W.2d 778 (Minn.App.1998).

### Summary Judgment Standard

██ On an appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether either party is entitled to judgment as a matter of law. *See* Minn. R. Civ. P. 56.03; *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). In this case there are no genuine issues of material fact. Therefore, the only issue on appeal is whether the parking easement was extinguished by the merger doctrine, or whether Pergament's interest in the easement survived as an exception to the merger doctrine. Since the issue is one of law, we review de novo. *See State Farm Ins. Cos. v. Seefeld,* 481 N.W.2d 62, 64 (Minn.1992).

### The Merger Doctrine

██ Under the merger doctrine, an easement that benefits the dominant estate and burdens the servient estate is extinguished when fee title to each estate is united in one owner.[1] *See Burnquist v. Cook,* 220 Minn. 48, 56, 19 N.W.2d 394, 398 (1945) (adopting merger doctrine). In his treatise, *The Law Of Real Property,* Professor Powell explains that the reason for the doctrine is that one cannot have, indeed has no need for, an easement in property one owns in fee. *See* 4 Richard R. Powell, *The Law of Real Property* § 34.22 (Patrick J. Rohan ed., 1997). Thus, in July 1988 when BSR obtained fee title to the servient estate (the office building/parking lot), BSR held fee title to both the dominant estate (the apartment building) and the servient estate and, under the merger doctrine, the parking easement was extinguished as to BSR and its successors in interest. *See Sorkil v. Strom,* 156 Minn. 155, 158–59, 194 N.W. 333, 334 (1923) (stating that "when an owner of an estate enjoys an easement over another estate and acquires title to the latter the easement is thereby extinguished").

### Revival of Extinguished Easement by Reference in Subsequent Deed

██ Once extinguished, an easement is not revived or reinstated when referred to in a subsequent conveyance. *See Caroga Realty Co. v. Tapper,* 274 Minn. 164, 180 n. 3, 143 N.W.2d 215, 226 n. 3 (1966); *see also Werner v. Sample,* 259 Minn. 273, 275, 107 N.W.2d 43, 44 (1961) (concluding that reference to an extinguished easement does not create or revive an easement, "it presupposes an existing easement"); *United Parking Stations, Inc. v. Calvary Temple,* 257 Minn. 273, 278, 101 N.W.2d 208, 212 (1960) (holding that a recital in a contract for deed does not reinstate or recreate a previously extinguished easement). Therefore, the extinguished parking easement was not revived as to BSR or its successors simply because the deeds conveying the property mentioned the easement.

### The Mortgage Exception

██ Under the mortgage exception to the merger doctrine, the mortgagee of the

---

1. The merger doctrine is defined in the Restatement (First) of Property, Servitudes § 497 (1944):

   An easement appurtenant is extinguished by unity of ownership of estates in the dominant and servient tenements to the extent to which the uses which could have been made prior to the unity by virtue of ownership of the estate in the dominant tenement can be made after the unity by virtue of ownership of the estate in the servient tenement.

   The comment to this section explains:

   If the two tracts come into common ownership they cannot continue to be dominant and servient, and the easement appurtenant ceases to exist because, though the privileges of use once authorized by it still exist, they are no longer incidental to the ownership of the dominant tenement but have become incidents of the ownership of what was formerly the servient tenement.

   Restatement (First) of Property, Servitudes § 497 cmt. a. The proposed Restatement (Third) of Property, Servitudes § 7.5, would clarify this rule. It states:

   A servitude is terminated when all the benefits and burdens come into a single ownership. Transfer of a previously benefited or burdened parcel into separate ownership does not revive a servitude terminated under the rule of this section.

   Restatement (Third) of Property, Servitudes § 7.5 (Tentative Draft No. 6, 1997).

dominant estate is protected from losing its interest in an easement otherwise extinguished when fee title to the dominant estate and fee title to the servient estate have been united in one fee owner.[2] This exception is grounded in equity and is intended to protect the mortgagee of the dominant estate from losing the value of its interest in an easement that is otherwise extinguished. *See Duval v. Becker*, 81 Md. 537, 32 A. 308, 309–10 (Maryland 1895) (stating that allowing an extinguishment of the mortgagee's interest "would jeopardize, if not wholly destroy the stability of every mortgage as security"). Thus, even though fee ownership of the dominant and servient estates was eventually merged in BSR, Midwest Federal's interest in the parking easement was not extinguished. If Midwest Federal's mortgagee interest[3] in the apartment building would have become possessory, Midwest Federal would have had the benefit of the parking easement and the servient estate, the office building/parking lot, would have had the burden of the easement. Therefore, under the mortgage exception, Midwest Federal retained its inchoate interest in the parking easement until the mortgage was satisfied.

■ Pergament argues, however, that the mortgage exception to the merger doctrine prevented BSR's interest in the easement from being extinguished and therefore prevents his interest, as BSR's successor, from being extinguished. Pergament would extend the mortgage exception to the merger doctrine so that as long as Midwest Federal had a protected mortgage interest in the parking easement, the easement could not be extinguished as to

anyone who later acquired the apartment property. Under Pergament's theory, a mortgage acts as a shield to defeat the merger doctrine. Relying on *Schwoyer v. Smith*, 388 Pa. 637, 131 A.2d 385 (1957), both the district court and the court of appeals agreed with Pergament that the mortgagee's interest in the easement prevented the merger doctrine from extinguishing the easement even as to the fee owner and its successors.

Upon close reading, however, *Schwoyer* does not support the lower courts' expansion of the mortgage exception to the merger doctrine. In *Schwoyer*, as in our case, the dominant and servient estates were united in one ownership, then sold to separate owners. *Id.* at 386. One of the owners sought to enforce an easement running to the benefit of the dominant estate and burdening the servient estate. *Id.* The owner of the servient estate argued that the merger doctrine extinguished the easement because the previous owner of the servient estate had acquired the dominant estate. *Id.* at 387. The Pennsylvania Supreme Court rejected the merger argument and held that the easement was not extinguished. *Id.* at 389.

The critical distinction between *Schwoyer* and our case is that in *Schwoyer*, the dominant estate was acquired by mortgage foreclosure. Therefore, the party that acquired the dominant estate by mortgage foreclosure obtained all the rights and interests the mortgagee held, including the rights and interests in the easement. By contrast, Pergament acquired the apartment property from the mortgagor, BSR, and therefore acquired only those interests

---

**2.** The mortgage exception to the merger doctrine is defined in the Restatement (First) of Property, Servitudes § 497 cmt. d:

[I]f either a dominant or servient tenement held in fee is subject to a power of termination or to an executory interest, and the fee ownership in the dominant tenement is united with the fee ownership in the servient tenement, the power of termination or the executory interest remains unaffected by such unity. Accordingly, if the power of

termination or the executory interest becomes possessory, the possessory estate is entitled to the benefit, or remains subject to the burden, of the easement.

**3.** In Minnesota a mortgage is a lien on property and not an estate in property. *See* Minn. Stat. § 559.17, subd. 1 (1998); *Mutual Benefit Life Ins. Co. v. Frantz Klodt & Son*, 306 Minn. 244, 247, 237 N.W.2d 350, 353 (1975).

BSR held at the time of the conveyance. Under the doctrine of merger, BSR's interest in the easement was extinguished and therefore BSR's successor in interest, Pergament, could not have acquired any interest in the easement from BSR.

### Conclusion

The merger doctrine is intended to extinguish easements when title to the dominant and servient estates are united in one fee owner simply because one has no need for an easement in property one owns in fee. By concluding that an easement may never be extinguished while there is a mortgage on the dominant estate, the lower court decisions have distorted the mortgage exception to the merger doctrine. This exception is intended only to protect the mortgagee of the dominant estate, should its interest become possessory, from losing the full value of its security interests, including the benefit of any easement.

We conclude that the easement was extinguished as to BSR and its assigns and successors, including Pergament, when BSR united fee title to the dominant and servient estates and we reverse and remand to the district court and direct that judgment be entered accordingly.[4]

Reversed.

LANCASTER, J., took no part in the consideration or decision of this case.

**4.** In contrast to the dissent, we consider it better appellate jurisprudence not to remand for consideration an issue that was not raised by either party at the district court, or at the court of appeals, or before this court, except by a question asked by the court at oral argument. We note that an inquiry into the effect of the City's subdivision resolution on the issue of whether the easement has been extinguished must acknowledge that the subdivision resolution was approved by the City of Minneapolis on November 20, 1987, that it includes no reference to easements, and that the easement in question was created by declaration dated December 22, 1987, over a month after the subdivision resolution was approved.

GILBERT, Justice (dissenting).

I concur with the majority's discussion of the mortgage exception to the merger doctrine, but believe that the analysis stops short of considering all of the facts and law presented in this case. Therefore, I dissent as to the result and would remand this case to the trial court.

Our case law has firmly established that application of the merger doctrine depends on the equities of the case. For over one hundred years we have recognized that "[t]he doctrine of merger is a flexible, equitable doctrine" the application of which depends on the facts or circumstances of the particular case at issue, including the intent of the parties.[1] *Continental Mut. Life Ins. Co. v. King,* 72 Minn. 287, 291, 75 N.W. 376, 378 (1898); *see also State ex rel. Inter–State Iron Co. v. Wallace,* 196 Minn. 212, 214–15, 264 N.W. 775, 776 (1936).

Contrary to this modern view of merger, no consideration is given to the intent of the parties and the impact of the majority's decision on all of the entities involved with the properties. The majority fails to consider or acknowledge the restrictions imposed on the properties by the City of Minneapolis. By law, the lot division of the original Willow Street property into separate apartment and office parcels could not have occurred without the prior approval of the Minneapolis City Planning Commission. *See* Minn.Stat. § 462.351–365 (1998); Minneapolis, Minn., City Char-

**1.** Appellant argues that our longstanding rule that equity affects the applicability of the merger doctrine does not apply to the merger of an appurtenant easement into a greater estate. As support, appellant cites a Colorado case and an Oregon case, both of which suggest that merger is different when easements are involved. *See Salazar v. Terry,* 911 P.2d 1086, 1091 (Colo.1996); *Witt v. Reavis,* 284 Or. 503, 587 P.2d 1005, 1008 (1978). However, neither these cases nor appellant provide any reason why, when a case contains obvious equitable factors that weigh against merger, we should not take those factors into consideration simply because the case involves an easement rather than some other property interest.

ter ch. 13, § 5 (1999); Minneapolis, Minn., Ordinances ch. 598 (1995). The Commission's resolution to that effect and various documents relating to the restrictions were in the record before the trial court and court of appeals. As required by law, the Commission's resolution approving the lot division was recorded with the Hennepin County Recorder on August 2, 1988. Thus, anyone examining the title, including the appellant, would be put on notice of the conditions placed by the city on both parcels. Although the document creating the parking easement was, obviously, not prepared in tangible form until after the city approved the lot subdivision, the record shows that the subdivision, as proposed to and accepted by the Commission, required the parking easement at issue in this case. The record also reflects "coordination" efforts between the two owners to properly document this transaction. The full Minneapolis City Council concurred in the Commission's approval of the subdivision "subject to the condition that none of the parcels may be broken down into their component parts without the prior approval of the City Planning Commission." The easement was referenced in deeds and title insurance policies [2] so all parties had actual notice of its existence.

Prior to this subdivision, the parking rights at issue in the present case were shared by the entire Willow Street property. An easement requiring the continued sharing of parking between the office and apartment parcels was an express condition of the subdivision. The easement was to continue so long as the apartment building continued in existence and was to run with the land and bind not only present owners but also future owners.

While the record does not show that the tenants of the apartment parcel ever used

the parking rights, the existence of those parking rights was nevertheless preserved for future "need or inten[t]" and was a valuable commodity to whomever held the parcel. The record contains evidence that on-site parking was a desired and valuable commodity to both the apartment and office tenants. In the Loring Park area, parking space is at a premium. The elimination of parking rights may significantly affect the already intense competition for scarce parking space.

Despite the extensive role the city played in creating the restricted property interests at stake here and the potentially adverse effect elimination of the parking easement could have on the Loring Park neighborhood, appellant admitted that the city has not even been notified of this action. The majority now continues this inequity by summarily eliminating the easement, contrary to the city's prohibition.

The majority suggests that we are prohibited from considering the city's interests on appeal because neither party addressed those interests at the trial court level. However, the lot division conditions were in the record and the lower courts decided the case in respondent's favor on other grounds and did not address the city's prohibition on breaking up the component parts. On review of a grant of summary judgment, we must review the entire record of a case to determine whether an issue of material fact exists. See Boutin v. Lafleur, 591 N.W.2d 711, 714 (Minn.1999); O'Malley v. Ulland Bros., 549 N.W.2d 889, 892 (Minn.1996). Where, as here, important factual and legal consid-

2.  The title insurance policy used by the appellant in purchasing this property and submitted to the trial court noted the easement in issue as an exception to clear title. Title examiners do not have the power to extinguish such rights, but rather are simply obligated to note them as being found in a title search. If a party wants to eliminate such valuable recorded rights, they must initiate an equitable action in the courts. Until the courts use their equitable powers to eliminate such interests, the title examiners can rely on the recorded documentation.

erations of record have not been reached by the lower courts, I would remand the case for consideration of that factual issue, rather than have this court become a fact finder.