## LEAD CITY MINERS' UNION v. MOYER et al.

### (District Court, D. South Dakota, S. D. August 6, 1916.)

.EASEMENTS ☞16—IMPLIED GRANT—SEVERANCE OF OWNERSHIP.

The owner of two adjoining lots, one back of the other, built a. three-story building covering the front lot and, together with a rear porch, extending 20 feet upon the back lot. One floor is used as a theater; the dressing rooms and part of the stage being upon the back lot. The owner afterward conveyed the unoccupied portion of the back lot for a public alley. There is no way of entering the rear of the building, except by way of such alley and the porch. Later the owner mortgaged the property, describing in the mortgage only the front lot. *Held*, that its acts created by implication a permanent easement in so much of the back lot as was occupied by the building and porch in favor of the front lot, on which the main part of the building was situated, which easement inured to the benefit of the mortgagee and its successors in title.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 43; Dec. Dig. ☞16.]

In Equity. Suit by the Lead City Miners' Union against Charles H. Moyer, the Western Federation of Miners, the Butte Miners' Union, and others. Decree for defendants.

Hayes & Heffron, of Deadwood, S. D., for plaintiff.

Stewart & Hodgson and W. G. Rice, all of Deadwood, S. D., for defendants.

ELLIOTT, District Judge. This is an action brought by the plaintiff to quiet title to lot 61, block 8, in the city of Lead, S. D., hereafter referred to as the "back lot." The defendants answer, and I find practically no dispute as to the material facts.

The lot fronting on Main street, referred to by all of the parties as the "front lot," is 105 feet deep, and this lot may be referred to as lot 57 in block 8. There is a three-story building on this lot, extending over onto lot 61, block 8, a distance of .10 feet, and the porch an additional 10 feet. This lot 61 is designated by the parties hereto as the "back lot."

It is conceded that this building was never constructed with reference to the lot lines and has always been used as one building, and

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

I find that one of the floors was used as a theater, that a part of the stage is in the end of the building on the back lot, and extends over onto the front lot, and the dressing rooms of the theater are on the porch, and that this porch extends to all three floors of the building.

I further find: That there would be no means of entering or leaving the building situated on the front lot, from the rear part of the building, except through that portion of the building standing on the back lot, and through use of said porch, and that such use has been made of the rear of the building and porch on said back lot since the completion of the building, many years prior to the giving of the mortgage and trust deeds thereon. That by such use there was an apparent permanent and obvious servitude imposed upon that part of the estate referred to herein as the back lot, and in favor of the front lot, which was absolutely necessary for the enjoyment of the use of the three-story building situated thereon.

I find that in the year 1900 plaintiff deeded to the city of Lead all of the back lot, except that portion of said lot on which the rear 10 feet of the building and the said porch stand, for use as a way or alley. April 1, 1910, plaintiff mortgaged to the Butte Miners' Union the said front lot, which mortgage contained the above description, and also the description of the same lot as contained in the Mitchell plat, and as extending back 105 feet, to secure a loan of $25,000.

I find from the testimony that, prior to making this loan, a committee representing the plaintiff went to Butte, Mont., and there presented the matter of securing a loan, and the security to be given, to the Butte Union; no particular description of property being mentioned, by lots or blocks, but always referring to the property as "the Lead City Miners' Union Hall or Opera House."

It further appears that a committee of the Butte Union, before the loan was made, came to Lead and examined the property. Thereafter, on the 27th day of April, 1911, this plaintiff deeded to Charles H. Moyer, as trustee of the Western Federation of Miners, the said front lot, describing it in the same manner as in the mortgage above referred to. Thereafter, on the 29th day of April, 1911, plaintiff deeded to Charles H. Moyer, as trustee of the Western Federation of Miners, all of the back lot above referred to, on which the said building stands, reserving only that portion that had been theretofore deeded to Lead City. Moyer, by virtue of the two deeds, from and after April 29, 1911, held the title to both lots in trust for the Western Federation of Miners, and the Butte Miners' Union held a mortgage on the front lot only, to secure an indebtedness from the plaintiff of $25,-000.

Nothing was done until the year 1913, when the plaintiff in this action began an action in the circuit court of the Eighth judicial circuit in and for Lawrence county, seeking a cancellation of the Butte mortgage, and also a cancellation of Moyer's deed to the front lot, al-

leging, among other grounds, that both deed and mortgage were executed without authority, and that the deed to Moyer was to secure the payment of certain advancements made and to be made to the plaintiff union by the Western Federation of Miners, which in fact had never been received by the Miners' Union, and further prayed that, in the event the deed and mortgage were not canceled, an accounting be had, and the total amount be determined by the court, and that the deed to Moyer be decreed to be a mortgage, and for general relief.

Such proceedings were had in that case that separate answers were interposed by the Butte Union, by Moyer as trustee for the Western Federation of Miners, and by Moyer and other officers of the Western Federation of Miners, and a decree was thereafter duly entered in said action sustaining the Butte mortgage for the full amount, and also ascertaining the amount due the Western Federation on account of advances made by them for this plaintiff, decreed Moyer's deed to be a mortgage, and ordered a sale of the property covered by the Butte mortgage and the deed to Moyer decreed to be a mortgage, for the amount due.

This action had reference only to the mortgage to the Butte Union and the deed to Moyer, trustee, to the front lot. No issue was joined with reference to the back lot, and no claim was made by any of the parties answering under or by virtue of the deed to the back lot, dated April 29, 1911, nor did plaintiff herein in that action assert any title thereto. The front lot was sold under execution issued on said decree on the 16th day of May, 1914, and at the sheriff's sale Moyer, as trustee for the Butte Union and the Western Federation, bid upon said lot the full amount of the judgment and costs of sale. Immediately thereafter this plaintiff instituted this action against these defendants to quiet title to the back lot.

The rights of the parties to this litigation must be determined in the light of these admitted facts; the defendants contending that, holding title under and by virtue of such sale, they are now entitled to a decree of this court on the rear 10 feet of the building and the porch, used in connection with the building located on the "back lot," to be appurtenant to the building on the "front lot," and ask that they have a further decree that they have a perpetual easement in the back lot to support such appurtenant, and further ask that the plaintiff and all persons claiming under it be forever enjoined and restrained from in any manner interfering with the free use and enjoyment of such right.

The plaintiff relies upon the fact that the mortgage was given upon a definite description, giving the number of the lot, the number of the block, and the length of the lot. Plaintiff further contends that under the decree of the state court the deed to Moyer, as trustee, to the front lot, was decreed a mortgage to secure the indebtedness above referred to, and further contends that his deed to the back lot was intended to secure the same indebtedness. This I find to be the fact. All parties concede this.

Plaintiff further contends that the defendants had a right to elect to foreclose the mortgage on the front lot, given to the Butte Union, and the mortgage in the form of trust deed given to Moyer, and, having established their lien, to sell upon execution the front lot for the entire amount secured by both mortgages, together with costs. That, having elected to do this, there is nothing due upon the indebtedness secured by the deed upon the back lot, and that they are entitled to have it canceled.

It is further insisted by the plaintiff that the second deed was given to Moyer for the purpose of covering that portion of the building situated thereon, and was a recognition of the fact that it was not intended to cover that portion of the building by the first deed or the mortgage. Plaintiff insists that no easement passed by implied grant outside of the boundary lines of the front lot.

The question presented, therefore, by this record, resolves itself into a determination by the court of this issue.

"Upon the subject of easements passing by implied grant, much discussion is found, and, while substantial agreement exists as to general rules, considerable uncertainty prevails in their application to particular cases. It must be conceded that, during the unity of title, the owner may subject one of several tenements or adjoining parcels of land, to such arrangements, incidents or uses, with respect to the other, as may suit his taste or convenience, without creating an easement in favor of one as against the other. * * * Where during the unity of title an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which, at the time of the severance, is in use, and is reasonably necessary for the fair enjoyment of the other, then upon a severance of such ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use. In such case the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage in substantially the same condition in which it appeared and was used when the grant was made." John Hancock Mut. Life Ins. Co. v. Patterson, 103 Ind. 582, 2 N. E. 188, 53 Am. Rep. 550; Lampman v. Milks, 21 N. Y. 505; Kieffer v. Imhoff, 26 Pa. 438; Pennsylvania R. Co. v. Jones, 50 Pa. 417; Phillips v. Phillips, 48 Pa. 178, 86 Am. Dec. 577; McCarty v. Kitchenman, 47 Pa. 243, 86 Am. Dec. 538.

I am satisfied that the application of this rule depends entirely upon the character of the improvement, the nature of the use of the building, the arrangement of the building, and therefore the use of the several parts, and that it was the owner's purpose, in adopting the existing arrangement, to create a permanent and common use in that part of the back lot upon which the end of the building and the porch was situated, for the benefit of the larger portion of the structure situated upon the front lot.

In my judgment, the undisputed facts in the case, as above stated, force the determination of this issue in favor of the defendants and against the plaintiff. I am satisfied that, considering the character

of this building and its arrangement, the use to which it was put, and the fact that all of the land was deeded to the city, except that covered by the porch and 10 feet of the end of the building, it was designed by the plaintiff to be permanent, that it is necessary to the enjoyment of the main building on the front lot, and that the parties contracted with reference to the condition of the property at the time of the giving of the mortgage, and therefore that neither has a right to alter arrangements then openly existing, so as to change materially the relative value of the respective parts. Curtiss v. Ayrault, 47 N. Y. 73; Butterworth v. Crawford, 46 N. Y. 349, 7 Am. Rep. 352; Cave v. Crafts, 53 Cal. 135.

In reaching this determination, I have considered the permanency of the building, the nature of the arrangement, the apparent purpose and use made by the plaintiff during the ownership of both of these lots, rather than the consideration of a possible use that might be made of the front lot and that portion of the building situated thereon.

Judgment may therefore be entered in favor of the defendants and against the plaintiff, subjecting plaintiff's ownership in the back lot to a perpetual easement to support defendants' appurtenant, and that the plaintiff and assigns be enjoined and restrained from interfering with the free use and enjoyment of such right.