## Witman, Appellant, v. Stichter et al.

Argued January 28, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Owen J. Roberts,* with him *Harvey F. Heinly,* for appellant, cited: Saccone v. Trust Co., 224 Pa. 554; Richmond v. Bennett, 205 Pa. 470; Erb v. Brown, 69 Pa.

216; Kieffer v. Imhoff, 26 Pa. 438; Lindeman v. Lindsey, 69 Pa. 93; Connery v. Brooke, 73 Pa. 80; Nickels v. Cornet Band, 52 Pa. Superior Ct. 145.

*Henry W. Lee*, of *Stevens & Lee*, with him *Zieber & Snyder* and *Charles H. Weidner*, for appellees, cited: Zerbey v. Allan, 215 Pa. 383; Rhoads v. Walter, 61 Pa. Superior Ct. 43; Dawson v. Coulter, 262 Pa. 566.

OPINION BY MR. JUSTICE FRAZER, March 17, 1930:

By his bill in this case plaintiff seeks to enjoin interference with the use by defendants of a private alley ten-feet wide in the rear of his property. A preliminary injunction was dissolved, and after the final hearing the learned chancellor dismissed the bill, plaintiff's exceptions were subsequently overruled and a final decree entered for defendants. Plaintiff's appeal is from that decree.

Plaintiff's lot fronts 28 feet on Penn Street in the City of Reading and extends back 100 feet to an alley in the rear, or its northern boundary, which was included in various conveyances covering that lot and also larger tracts, for more than a century; the controversy here is based on a deed, dated June 12, 1872, whereby grantor, owner of the lot in fee, limited to grantee the right and use of the easement or private way in the rear, to a period covering the latter's lifetime. There is no question as to the real and ancient origin of the easement. So far back as 1852 this court in Ebner v. Stichter, 19 Pa. 19, found the alley or private way was created by the terms of a deed made in 1793, by which John Bishop, owner in fee of a tract of land within the City of Reading, known as Lot No. 1, conveyed to John Schenfelder a parcel, out of that tract, 28 feet wide and 100 feet deep, bounded on the north by the alley in question and known on the general plan of the city as Lot No. 503, fronting on the south side of Penn Street; and, as set forth in the deed, "Together with the free and uninterrupted use

and privilege of a passage in and along the above mentioned 10 feet alley." The passageway at that time began at a public street, ran westward, bounding first the rear of a corner lot, not owned by plaintiff here, and ending at a contiguous larger tract on the western side, known as Lot No. 2, and held by a different owner. It was thus a blind alley, being closed at the western end. About the year 1810, Shenfelder, still owner of Lot No. 503, made an arrangement with the then holder of the abutting Lot No. 2 to use the alley and a continuing covered way across the latter tract to another street, in common for their respective business purposes. By this arrangement entrance and egress were effected on two thoroughfares, and the alley was no longer a cul-de-sac.

Following the death of Shenfelder, Lot No. 303, bounded by the alley in question, passed through various transfers, until in 1841 it was conveyed by deed to John Ebner. In 1872, Stichter, predecessor in title of defendants here, was the owner in fee of the property north of Lot No. 503 and the land contiguous to the latter lot on the east. In that year, by deed dated April 1st, recorded the following day, Ebner conveyed Lot No. 503 to Stichter, "Together with all the estate, right, title, interest, property, claim, and demand of the said party hereto of the first part, of, in, or to a certain 10 feet alley, *immediately north of the lot of ground herein described and conveyed.*" Stichter thus obtained and held in fee the entire tract of land figuring in this controversy, with the alley easement as well. Two months after this transfer, Stichter, by deed, dated June 12, 1872, recorded June 14, 1872, in Deed Book volume 108, page 361, reconveyed Lot No. 503 to Ebner, with the following clearly expressed covenant in the instrument: "Together with the right and privilege to said John Ebner and his assigns during the lifetime of the said John Ebner, but no longer, to the use of the private way running in from Fifth Street and terminating on Penn Street jointly with the said Joseph L. Stichter, his

heirs and assigns in the same manner as the said John Ebner had previous to the sale of the above described premises by him to the said Joseph Stichter."

The claim of plaintiff to an easement in the alley in question is based on the transfer by the deed of June 12, 1872, from Stichter to Ebner of Lot No. 503, which plaintiff now owns, on the ground that the legal effect of the deed of reconveyance to Ebner, by bounding the premises upon the alley, conveyed to Shenfelder and his successors in title ownership to the soil of one-half of the alley and an implied perpetual easement therein. Defendants contend that, at the time in 1872 Stichter acquired in fee Lot No. 503, including the soil beneath the alley, there resulted a unity of title in a single owner, that this unity of ownership extinguished the easement, and that by the deed of reconveyance to Ebner, the grantor revived the easement to the use of grantee, but that, by the terms of the deed, the easement was to exist and continue no longer than the lifetime of Ebner. Ebner died February 24, 1875. The court below sustained defendant's position, and we think the facts in the case and the principles of law applicable fully justify that conclusion.

All questions for consideration here arise, as they must arise, out of the deed of 1872, by which Stichter conveyed Lot No. 503 to Ebner. "In construing the grant or other instrument whereby the easement is created, the document itself, and that only, can, in the first instance, be looked at to discover the extent and nature of the agreement and the terms of the grant. If on the face of the document no doubt arises that the words are used in their primary sense, and if, read in that sense, they are plain and unambiguous, the matter is concluded": Gale on Easements, page 80; Where the intention of the parties can be ascertained, nothing remains but to effectuate that intention: 2 Devlin on Real Estate 835; The terms of the grant, as they can be learned either by words clearly expressed, or by just

and sound construction, will regulate and measure the rights of the grantee: 2 Devlin, supra, quoting Salesbury v. Andrews, 19 Pick. 250, 252. Plainer words, or more incisive, or more comprehensive for the purpose, could not have been selected than those in which Stichter sets forth his covenant in the deed as to the nature of the easement and its limitation. What he there covenants is exactly what he means and intends to covenant, to grant the use of the alley to Ebner "during the lifetime of the said John Ebner, but no longer." The stipulation is precise and definite, both as to the affirmative declaration that grantee shall have the use of the easement so long as he lives, and to the positive opposite direction that the use must end with the death of Ebner. We might indeed say, the very words shout the meaning and intention of grantor. Nor can that meaning and intention have been less positive and clear to Ebner. At the very least, it may be sensibly presumed that he read and understood the instrument, and, as evidenced by the receipt for his payment of the consideration money, he acquiesced in all its covenants. In construing a contract, the intention of the parties govern, and that rule is to be observed in construing a deed: Kynerd v. Hulen, 5 Fed. (2d) 160, 161.

It has long been held in this and other jurisdictions generally, that unity of title and possession extinguish an existing easement, such as in the present case; and it is only in instances where the use is a high, real and continuing necessity, as shown by the proved circumstances in the case, that the rule might not apply: Kieffer v. Imhoff, 26 Pa. 438. That is not, however, the case here, as we shall presently show.

Where, as set forth in Washburn's Easements & Servitudes, page 684, there is a union of an absolute title to and possession of the dominant and servient estates in the same person, it operates to extinguish any such easement absolutely and forever, for the single reason that no man can have an easement in his own land; and, of

course, ceases to be any longer appurtenant and can only be made so again by express grant; the two estates merge and the easement is ended: Zerby v. Allan, 215 Pa. 383; Coleman's App., 62 Pa. 252, 274; Kieffer v. Imhoff, supra. By Ebner's sale of Lot No. 503 in 1872 to Stichter, the latter at that time owning the abutting property, became unit-owner of the entire tract, which unquestionably included the soil under the easement, since it extended wholly over the ground of Lot No. 503, and the deed does not stipulate a different disposal, or contain a reservation or other restrictive arrangement as to the soil. We think it is not required here to more than restate the obvious fact, the common result of the legal consequences of a proper sale of real estate, that when one legally purchases a tract of land, in accordance with the metes and bounds set forth in the deed of conveyance, he takes title to the entire area, unless otherwise properly covenanted in the deed. It may be said, then, that by the unit of ownership in Stichter in 1872, any title to the soil beneath the alley was submerged in the complete title of Stichter to the entire plot. In view of this decision, we deem it unnecessary to enter further upon the question of his ownership of the ground included in the alley.

We search in vain in Stichter's deed to Ebner in 1872 for grounds to support plaintiff's argument that in the instrument of reconveyance there is an implied grant of a perpetual easement to Ebner. It is conceded, of course, that he could have specifically made such grant, and he could have sold it without an easement, had Ebner been willing to buy under such arrangement. Having absolute dominion over and control of the premises, he could exercise what right he pleased, and might undoubtedly dispose of it as he elected: Kieffer v. Imhoff, supra. The authorities have long held that it is only in cases of the strictest necessity and where it would be reasonable to suppose that the parties intended, but did not express the intention, to contract

with reference to the easement, that the principle of implication may be invoked.

The evidence before the chancellor does not indicate that the alley was in fact ever a way of more than a convenience for those who chose to use it, and long before the year 1872, when Stichter granted Lot No. 503 to Ebner, with the limitation to the easement, the alley had degenerated into a way of sufferance and permission. Occupants of plaintiff's premises were at times permitted or suffered to pass in and out, as the court below found, to and from the premises, and use the alley as a convenient way to reach a public street. A wooden gate was erected on the Stichter property in 1880 which blocked the use of the alley, and this obstruction was later replaced by an iron gate, the keys to both being always in possession of Stichter and of his successors in title; and there is nowhere evidence tending to show that Ebner in his lifetime did not acquiesce and consent to this permissive character of the use of the alley. Previous to 1872 he himself owned Lot No. 503. He certainly knew the character of the use then. He conveyed it to Stichter in that year with that knowledge, and he repurchased it ten weeks later with the same understanding. Since it was not a right of necessity, such as controlled in Kieffer v. Imhoff, supra, and was extinguished by the unit-ownership of Stichter, the latter elected to revive it, for whatever convenient benefit and advantage Ebner might find in the use of it, but only for a limited period of time. In express terms, it is to continue for the lifetime of the grantee, but no longer. "Whatever shows the intent of the parties to bind themselves to a performance of a thing stipulated, may be deemed a covenant, without regard to the form of expression made use of": Taylor v. Preston, 79 Pa. 436, 443. Ebner accepted this covenant with his eyes open; he knew as much about the land and the conditions of it in 1872 as did Stichter; and hence, if we were to say that this covenant does not cover and conclude exactly

the intention, purpose and mutual understanding and agreement of the parties to the deed, we should not only be required to read into the instrument words not clearly there, but eliminate the precise words of agreement used therein, and thus nullify a stipulation so plainly and directly expressed that it would be an act of utter absurdity to disregard it.

Appellants' argument that the limited grant in the deed of the easement brought a cessation of Ebner's right to only the passageway over Stichter's property, exclusive of the ten feet wide alley, has no basis for consideration whatever. The right to the former way was merely a permissive right given the arrangement in the year 1810 by the then owners of the property to the occupiers of Lot No. 503, which tract, in fact, never at any time has been without another entrance and egress, as it fronts on a public street, the alley being in the rear. But the terms of the deed allow of no doubt as to the extent of the easement that Ebner was to have until his death, and no longer. He acquires only the "use of the private way running in from Fifth Street and terminating on Penn Street." This description embraces the entire passageway, including the alley bounding Lot No. 503 on the north.

Our examination of the authorities, having relation to the controversy here, establishes, in our opinion, the conclusion that the terms of the deed of June 12, 1872, with the circumstances surrounding the case supporting them, are controlling. There was not there, as was the situation in Kieffer v. Imhoff, supra, and McCarty v. Kitchenman, 47 Pa. 239, a right of way of real and continuing necessity. As the chancellor found, the alley had by 1872 sunk to a mere way of sufferance or permission. Whatever rights Ebner had in it in 1872 when he sold the property to Stichter, were conveyed by his deed to the latter, and by the resulting unity of ownership in Stichter, title to the soil within the alley vested in him and the use of the easement was wholly extin-

guished. Stichter, when ten weeks later he reconveyed the same premises to Ebner, chose to revive the easement, with the mutual understanding and agreement, as explicitly expressed in the deed, that the use was to last and continue only during the lifetime of the grantee. It was of course, a legal understanding: "the intent of the grantors, when legal, must govern and direct the interpretation that shall be given to their deed; and if this be clearly expressed by the terms of it, no extraneous facts or circumstances can be admitted or received to alter or change it": Means v. Presbyterian Church, 3 W. & S. 303, 312. As the learned chancellor aptly states, "every right in the alley that Ebner had when he owned it was contemplated and was expressly revived and conveyed, and was expressly restricted to the duration of Ebner's life."

The decree of the court below is affirmed at appellant's costs.