## Kohn v. Klopfenstein et ux.

*William B. Hudders*, for plaintiff.

*Robert E. Haas* and *Morris Efron*, for defendants.

DIEFENDERFER, J., June 15, 1953.—The action herein was originally instituted in equity but by stipulation of counsel an agreed statement of facts was submitted by both parties and the case is now certified from the equity side to law side of the court and the matter shall be now considered an action in ejectment.

It furthermore appears by the agreement of facts that defendants will not proceed with construction of garage until determination of this action.

Plaintiff claims his title by deed of conveyance from William W. Strauss, dated November 5, 1952, recorded in the office of the Recorder of Deeds in and for the County of Lehigh in Deed Book, vol. 780, page 682, a complete copy of which is marked exhibit A.

Plaintiff's predecessor in title, William W. Strauss, acquired his title by deed from Charles W. Kaeppel, dated July 17, 1930, recorded in the recorder's office in Deed Book, vol. 504, page 103, a complete copy of which is marked exhibit B.

Defendants claim title by deed from the tax claim bureau, dated November 2, 1950, recorded in the recorder's office in Deed Book, vol. 747, page 456, a complete copy of which is marked exhibit C.

The land described in the foregoing deed was sold by the Lehigh County Tax Claim Bureau as the property of Irene J. Fenstermaker in the 1950 judicial tax sale, no. 2-1209, of No. 194 September term, 1949, the record of which is incorporated herein by reference.

The tax liens referred to in the tax sale record to 1950 judicial tax sale no. 2-1209 are as more fully set forth in exhibit F.

Irene J. Fenstermaker acquired her title to the premises by virtue of the deed from William W. Strauss and wife, dated February 25, 1945, recorded in the recorder's office in Deed Book, vol. 666, page 48, a complete copy of which is marked exhibit E.

The lots, to wit, nos. 156, 157, 158, 159, 160 Oakside Avenue, now known on the city plan as nos. 1624, 1626, 1628, 1630, 1632 East Greenleaf Street, were laid out by Charles W. Kaeppel on plan of Oakside Manor in Map Book, vol. 2, page 180, and reference is also made to plan in Map Book, vol. 3, page 77, both of the plans are incorporated herein by reference.

On March 30, 1926, the City of Allentown enacted ordinance No. 1889, whereby Polk Street was located, a copy of which is marked exhibit G.

On an unknown date subsequent to March 30, 1926, Polk Street was laid out and opened over Lot 158 and parts of Lots 157 and 159, Oakside Manor, now known as no. 1628 and parts of nos. 1626 and 1630 East Greenleaf Street.

On August 26, 1952, city council enacted ordinance No. 6991 which, inter alia, vacated Polk Street, a copy of which is marked exhibit D.

On September 2, 1952, the City of Allentown authorized defendants to construct sidewalk, curb and gutter at No. 1628 East Greenleaf Street, according to order no. 25571, and a warrant of survey no. 8970 was issued, and the sidewalk, curb and gutter have been constructed. Zoning application no. 5111, permit no. 4709, was issued by the City of Allentown on October 21, 1952. Copies of Order No. 25571, warrant of survey no. 8970, are marked exhibit I, and copy of zoning application no. 5111 is marked exhibit J.

A chronological table of events is hereby incorporated in this opinion to show the various steps herein:

March 29, 1926.—Kaeppel owned the entire tract in fee of which Polk Street, between East Kurtz and East Greenleaf Streets, was a part.

March 30, 1926.—City of Allentown, by ordinance, located Polk Street over Kaeppel's lots nos. 157-58-59.

1930.—City of Allentown assessed taxes against lots nos. 156-57-58-59-60. Unpaid.

School District assessed taxes against lots nos. 156 and 157. Unpaid.

July 17, 1930.—Kaeppel sold lots nos. 156 to 160 to Strauss.

1931.—County of Lehigh assessed taxes against lots nos. 156 to 160. Unpaid.

February 28, 1945.—Strauss sold lots nos. 156 to 160 to Fenstermaker "less and excepting all that lot and portion of lots utilized in the opening of Polk Street."

November 2, 1950.—Fenstermaker, by tax claim bureau, sold lots nos. 156 to 160 to Klopfenstein, defendant in within action.

August 26, 1952.—City of Allentown vacated Polk Street.

November 5, 1952.—Strauss sold Kohn, plaintiff in the within action, all of his right, title and interest in lots nos. 156-160.

Lot no. 156 is now 1624 East Greenleaf Street; lot no. 157 is now 1626 East Greenleaf Street; lot no. 158 is now 1628 East Greenleaf Street; lot no. 159 is now 1630 East Greenleaf Street; lot no. 160 is now 1632 East Greenleaf Street.

The question therefore arises in this case concerning the title to the bed of what was formerly known as Polk Street, between East Kurtz Street and East Greenleaf Street, Allentown, Pa.

Plaintiff in the within action claims his title by deed from William W. Strauss (exhibit A) who, in turn, acquired title by deed from Charles W. Kaeppel (exhibit B). Kaeppel had acquired title to a portion of the tract in question on May 31, 1919 (Deed Book, vol. 337, page 63), and the remaining portion on March 29, 1926 (Deed Book, vol. 420, page 248). William Strauss, during his ownership of the ground, conveyed lots nos. 156 and 157 (being now known as 1624-1626 East Greenleaf Street) and lots nos. 158-159 and 160 (being now known as 1628-1630-1632 East Greenleaf Street) to Irene J. Fenstermaker in February of 1945 (exhibit E), in which deed the following language appears:

"Less and excepting all that lot and portion of lots utilized in the opening of Polk Street."

In opening Polk Street (exhibit G), the City of Allentown took lots nos. 157 (1626 East Greenleaf Street), 158 (1628 East Greenleaf Street), and part of 159 (1630 Greenleaf Street).

Defendants, on the other hand, claim title through a deed received from the Lehigh County Tax Claim Bureau. The bureau had sold lots nos. 156 to 160 as the property of Irene J. Fenstermaker in 1950 judicial tax sale nos. 2-1209.

Polk Street, by ordinance dated March 30, 1926 (exhibit G) was located, and on August 26, 1952, city council vacated the same street (exhibit D).

An examination of exhibit F indicates that the taxes upon which the Lehigh County Tax Claim Bureau relied in its sale of the property to defendants were for taxes commencing with the year 1930—at which time Polk Street had been, by ordinance no. 1889 (exhibit G), located. In other words, the sale through which defendants claim title was based upon taxes levied against a street.

On the other hand, there can be no question but that Kaeppel, by deed dated May 31, 1919 (Deed Book, vol. 387, page 163) and by deed dated March 29, 1926 (Deed Book, vol. 420, page 428) acquired legal title to the tract from which a portion was taken by the City of Allentown on March 30, 1926 (exhibit G) to locate Polk Street. Kaeppel, in turn, conveyed to Strauss (exhibit B)—an examination of that deed fails to reveal any intention on the part of the grantor to reserve or except to himself title to that portion of the tract upon which Polk Street was built. However, this is important: When Strauss conveyed the lots to Irene J. Fenstermaker by deed dated February 28, 1945 (exhibit E), he specifically excepted from the conveyance "*all that lot and portion of lots utilized in the opening of Polk Street.*"

When, therefore, the City of Allentown vacated Polk Street (exhibit D), Strauss, who was absolute owner of the fee, remained absolute owner of the ground upon which Polk Street had been located free and clear of any public easement and was qualified to make a conveyance thereof to plaintiff, as he did (exhibit A).

Defendants, to maintain title to the strip of ground in question must show that the taxes assessed against the ground in 1930 were valid since the deed to defendants by the Lehigh County Tax Claim Bureau is based upon a sale of this ground for taxes for the years commencing with 1930. Since Polk Street was located by an ordinance of the City of Allentown in 1926, it follows that defendants must further show that the various taxing agencies of the City of Allentown and County of Lehigh are privileged to subject streets of the city to taxation.

Land within the limits of a public highway cannot be assessed for taxes. The case of The County of Erie v. The City of Erie, 113 Pa. 360, is in point, the court holding that a municipality is not subject to the general tax laws, and property used for public purposes is not taxable unless specifically made so by law.

A case in another jurisdiction which is almost on all fours with the present situation is Graham v. City of Detroit, 174 Mich. 538, 140 N. W. 949. Plaintiff, in this case, brought an action in ejectment against defendant to recover possession of the land, the right and title of plaintiff being based upon certain tax deeds resulting from sale because of delinquent taxes. Plaintiff took the position that he obtained title by reason of the tax deeds—defendant maintained that before the land in question was sold at the tax sale, the easement to use those lands as public highways had already been acquired, and the result of such tax sale was to convey no interest whatsoever in the land to plaintiff.

The court held that at the time the land was bid in by plaintiff it was a public highway and by sustaining the judgment of the circuit court in ordering a verdict for defendant, held, in effect, that the State cannot sell for delinquent taxes real estate in which a municipality has an easement for highway purposes.

The within situation also finds support in the case of Lancy v. Boston et al., 186 Mass. 128, 71 N. E. 302, where it was held that the tax assessed against the owner of the fee of land in which an easement had been taken for public use (part for a street and part for a railroad station) was invalid and, therefore, the purchasers at the sale for delinquent taxes acquired no title to property. The court said that an appropriation of land to the use of the public for a highway creates an interest in the public which cannot be affected by an attempt to tax the land to the owner of the fee. The various provisions as to the taxation of real estate and the collection of taxes are inapplicable to property held for such public use. It has often been decided that lands appropriated to said uses are exempt from taxation (44 LRA, N. S. 836).

In Warren v. San Francisco, 150 Cal. 167, 88 Pac. 712, it was held that an assessment of taxes upon a portion of an open street is without effect and creates no lien upon the land so assessed. The court there held that the sale and conveyance to the State for a delinquent tax upon such an assessment transferred no title to the State and a grantee from the State under such sale would acquire no right in the land.

The property used for governmental purposes is exempt from taxation and it follows, therefore, that the Lehigh County Tax Claim Bureau which based its deed to defendants upon taxes levied against an open street was in no position to transfer title. At the time the land was purchased by defendants it was a public high-

way in the City of Allentown which could not be sold for delinquent real estate taxes.

See also Exhibit E—a deed from plaintiff's predecessor in title to defendants' predecessor in title, wherein the following language appears:

"Less and excepting all that lot and portion of lots utilized in the opening of Polk Street."

The language clearly shows the intention of grantor to reserve to himself the fee to that portion of the ground upon which Polk Street was built. Title to Polk Street, subject to the rights of the City of Allentown to use it as a public highway, remained in Strauss and this could be determined by an examination of the title. Defendants were put on notice of the right of plaintiff's predecessor in title—defendants knew that Irene J. Fenstermaker never had an interest in the ground upon which Polk Street was built. Therefore, it follows that when they obtained a deed from the Lehigh County Tax Claim Bureau (exhibit C) for ground purporting to be property of Irene J. Fenstermaker, they must have known they were not obtaining title to the bed of Polk Street which was still an open street.

It is extremely important in this case that at the time defendants purchased the ground from the bureau (November 2, 1950),Polk Street was an open street being maintained by the City of Allentown. It was not until 1952, almost two years after the tax sale, that the City of Allentown, at the request of defendants, vacated Polk Street.

There is a fundamental distinction between a "reservation" and an "exception." A reservation in a deed is the creation of a right or interest which had no prior existence in a thing or part of a thing granted. It is distinguished from an exception in that it is a new right or interest. An exception is always a part of

the thing granted. An exception is part of the fee: Lauderbach-Zerby Co. v. Lewis, 283 Pa. 250.

If the particular clause be construed as an exception from the grant, no words of inheritance (i.e., heirs and assigns) are necessary because the title to the excepted part remains in grantor, and never passes to grantee, but if construed as a reservation words of inheritance are necessary; otherwise, the right ceases at the death of grantor, he having created some new right out of the property granted which was not in existence at the time of the granting: Mandle v. Gharing et al., 256 Pa. 121.

In this case no words of inheritance are used, indicating an obvious intent on the part of grantor to except for himself a part of the thing granted—if the intention was to create a reservation, then words of inheritance would have been used.

The only reasonable inference that can be drawn from the words used is that the clause in question created an exception and not a reservation. If we were to construe it as a reservation, and forgetting for the moment that Polk Street has been vacated, then, upon the death of the grantor, Strauss, the right would cease —certainly it cannot be said that this would be a reasonable inference from all the facts of the case. Why would Strauss merely want to reserve to himself and himself alone a right such as is contended for by defendants? Strauss did not ask for a mere easement over the ground which, after all, is what a reservation would be in this case—on the contrary, he deliberately took out from the conveyance a part of the ground granted.

The court will in the first instance look only at the document itself to discover the nature and extent of the grant. If, on the face of the document, no doubt arises that the words are used in their primary sense and, if read in that sense, they are plain and unam-

biguous, the matter is concluded. *The terms of the grant as they can be learned by words clearly expressed, will regulate and measure the rights of the grantee:* Witman v. Stichter, 299 Pa. 484.

On the face of the deed from Strauss to Fenstermaker in which the particular clause appears, no doubt can possibly arise as to what was meant—there is no ambiguity whatsoever. The words clearly express an exception by grantor of a portion of the land conveyed. Plainer words, or more comprehensive for the purpose, could not have been selected than those used by Strauss. If he meant to merely reserve a right of way over the ground, would he, by any stretch of the imagination, have said "less and excepting all the lot . . . in the opening of Polk Street"?

See also Mannerback v. Pennsylvania Railroad Company, 16 Pa. Superior Ct. 622, where the following clause had to be construed:

"Excepting and forever reserving the graveyard on the lands hereby conveyed at all times hereafter to enter thereon without hinderance or denial."

The court there held in holding this to be an exception, the language is applicable to the present case:

"The deed, above mentioned, described a tract of land which included the graveyard. That which was withheld from the grantee, by the clause quoted, was a part of the tract conveyed. It was a piece of the land, described by the use to which it was then put. . . . There was no creation of a right or interest which had no prior existence."

The above-cited case also answers another argument of defendants' counsel, to wit, that the appropriate words of an exception do not appear in the habendum clause of the deed; at page 626 the following appears:

"The position of the exception in the deed does not aid the appellant's contention, since it matters not "in

what part of the conveyance the reservation is made, whether in the premises, the clause of grant, the habendum, or redendum'."

Now, June 15, 1953, the court is of the opinion and hereby decrees that plaintiff in this case, George Kohn, presently holds title to the property in question and thereby does have a right, title and interest to maintain this action in ejectment and it furthermore orders that defendants be restrained from obstructing the right, title and use of the property in question in the future. Costs to be placed upon defendants herein. Unless exceptions are filed within 30 days from the within date, the same shall become final.